44 So.2d 781

**McKEE v. STATE.**

5 Div. 485.

Supreme Court of Alabama.

Dec. 15, 1949.

Rehearing Denied Feb. 2, 1950.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, and Wm. N. McQueen, Asst. Attys. Gen., for the petition.

Omar L. Reynolds and Reynolds & Reynolds, of Clanton, opposed.

BROWN, Justice.

The defendant Dewey Arseal McKee has been twice convicted for feloniously causing the death of his wife, first for murder in the second degree and on his last trial of manslaughter in the first degree.

In the report of the appeal from the first conviction it was stated in the opinion of the court: "The testimony of Dr. Rehling, State Toxicologist, was the most significant presented by the state. Dr. Rehling testified that, on June 27, 1946, some eight days after her death, he disinterred Mrs. McKee's body and performed an autopsy thereon. His dissection was confined to the chest and abdominal cavities. Prior to dissection the body bore a number of bruises and abrasions, one being the left center of the forehead at the hair line, dark in color and about one and one half inches in diameter; there was a skin abra-

sion about one inch long and a quarter of an inch wide just forward of the right ear; there were a number of spot bruises on the outer aspect of the upper right arm; a group of three skin abrasions on the upper left shoulder blade area, about one eighth to three eighths of an inch wide and a quarter of an inch in length; brush marks or scratches on the right leg just below the knee; at the base of the shin was a bruise; at the base of the left hip was a bruise about two or three inches in length. Under the area of this last bruise was located the spleen.

"Upon opening the abdominal cavity Dr. Rehling found that Mrs. McKee's spleen was enlarged about three times its normal size. Dr. Rehling stated that the spleen is a spongy substance, and a very tender organ in normal state. When enlarged from disease it is still more friable. He found that the spleen had been ruptured, there being a tear in it about one and one half inches long. This rupture would cause excruciating pain, vomiting, and an internal hemorrhage which would result in death within thirty minutes.

"Dr. Rehling gave as his opinion that Mrs. McKee had died as a result of this ruptured spleen, and that said rupture had resulted from an external blow.

"During Dr. Rehling's testimony, and after he had testifed in detail as to the physical condition of Mrs. McKee's body at the time of his autopsy thereon, particularly as to the spleen and its condition, the state, over the strenuous objections of the defense, introduced several photographs of the body taken by Dr. Rehling and developed under his direction. We will refer later to this phase of the evidence."

On that appeal the case was reversed because of the court permitting in evidence, over the defendant's objection, the photographs made and developed by Dr. Rehling after the autopsy of the area where the deceased's body was opened, disclosing the ruptured spleen. The description of the photograph by the court on that appeal is as follows: "It shows deceased's body from the upper forehead to a point about midway of the hips. The body is lying on its back. The torso has been opened,

the lower line of the dissection being at about a line drawn from the crest of the hipbones and extending to a depth of about two thirds of the body. The incision then extends up the body to a point close to the arm pits. The thick flap of skin and fascia thus created has been thrown back covering deceased's face. The inner vitals of deceased are exposed in the large area thus uncovered. Five streams of dark fluid, we presume blood, are running down the uncut portion of the torso. The picture further shows a robed figure back of the body with rubber gloved hands pushed into the vitals so as to disclose a dark object which we know from Dr. Rehling's testimony to be the spleen. On this organ there is a dark line which is the rupture. However another dark line of less width extends diagonally across the spleen. This we assume is blood. The spleen constitutes a very, very, small portion of the whole picture."

The court then observed: "In the present case the ghastliness of Exhibit 'H' resulted in a large degree, not from the act of this defendant, but from the dissection necessary in the autopsical operation. Conceding the relevancy in evidence of pictures of injured vital organs, which injuries allegedly caused the deceased's death, yet we are clear to the conclusion that such photographs should be limited to such organs and only so much of the surrounding body as may be necessary to illustrate the organ and its injuries. Where, as in this case, massive mutilation of a body is necessary to expose such injured organ, fairness to an accused demands that only so much of the surrounding dissected body area be pictured as is reasonably necessary to furnish visual aid to the jury in determining the question of facts presented."

On the last appeal it was observed: "Timely objections were interposed to the introduction of each of the other photographic exhibits. The point is particularly stressed that as a preliminary proof to their introduction it was not shown that the photographs, taken some eight days after death, accurately and correctly portrayed wounds on the body that were present at the time of decedent's death.

"In other words, it is urged that for aught appearing from the evidence the various wounds and bruises depicted by the picture could have been occasioned by the handling of the body in preparation for burial, disinterment, etc.

"In the former opinion Judge Harwood described the various exhibits with which we are now concerned. To this description may be added that the photographs disclose not only what appears to be distinct wounds and bruises on the body, but also portions of skin discolorations.

"Counsel is correct in his position with reference to the lack of preliminary proof. * * *."

The Court of Appeals laid down and followed as the formula necessary to the admission of the photographs in connection with the testimony of Dr. Rehling, the State Toxicologist, the rule that: "When a photograph of a wound upon a dead body is offered in evidence it must first be shown by competent proof that the photograph is an accurate portrayal of the wound it is to depict, *as of the time the wound was inflicted.*" [Italics supplied.] The opinion then concludes: "This was not done in the case at bar and in our opinion the trial judge erred to a reversal in overruling the defendant's objection to the introduction of each of said photographs in evidence."

We think we are safe in stating as a general and well settled proposition of law that the courts in this country take judicial knowledge that the art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object *at the time they were taken,* photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. This proposition is supported by the following cases. Luke v. Calhoun County, 52 Ala. 115, 118 (decided more than three quarters of a century ago); Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Hall v. State, 78 Fla. 420, 83 So. 513, 8 A.L.R. 1034.

[2] We also approve so much of the text taken from 20 Am.Jur. p. 611-612, § 732, which reads as follows: "A photograph of a person or of some part of the body which is shown to be a proper representation of its subject is admissible to prove his appearance or condition at the time of the injuries, or to prove the condition of, the extent of injuries to, etc., the part of the body photographed, as the case may be * * *."

" * * * The sole question is whether the physical evidence will assist, and not mislead, the jury in understanding the matter before them. It is not necessary that the object sought to be admitted be in exactly the same condition as at the time of the occurrence of the fact that it is intended to illustrate; such a requirement would make evidence of this nature inadmissible in practically all cases, since it is hardly ever possible to reproduce conditions exactly. So it is that the fact that clothing of the deceased has been washed will not affect its admissibility, where the purpose of offering it in evidence is to establish the size and location of wounds. In a prosecution for manslaughter, the shirt of the deceased, from which a piece of cloth had been taken for experimental purposes, was, nevertheless, admissible. In the same case it was held that an automobile fender had not been substantially changed, and was therefore admissible, although a dent in the fender had been covered with shellac to prevent corrosion. The rear halves of garments of a person shot in the back have been held admissible. There was no error in admitting in evidence a photograph of the deceased, taken after the performance of an autopsy, even though the photograph showed marks of incisions made for the purposes of the autopsy, the autopsy surgeon pointing out to the jury the marks resulting from his examination." Wharton Cr.Ev. Vol. 2, p. 1282, § 757 and cases cited to support the text.

The formula laid down by the Court of Appeals would render inadmissible the photographs taken by Dr. Rehling at the

time of the autopsy although his testimony may have shown that they correctly depicted the wounds, bruises and abrasions on the dead body at the time the photographs were made and that said photographed wounds were, in his opinion, made prior to death; that such wounds were easily distinguishable from abrasions, bruises, injuries and punctures made on or in the corpse at the time it was embalmed or when it was exhumed from the grave. The fact that the photographs were made after exhumation, eight days after death, goes to the weight of the evidence not to its admissibility.

Courts and juries cannot be too squeamish about looking at unpleasant things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it. Grissett v. State, 241 Ala. 343, 2 So.2d 399, 401; Green v. State, Ala.Sup., 41 So.2d 566;[1] Blue v. State, 246 Ala. 73, 19 So.2d 11; Pilley v. State, 247 Ala. 523, 25 So.2d 57. The general rule is well established that the trial court is vested with judicial discretion in determining the sufficiency of preliminary evidence offered to establish a predicate for the admission of other evidence on the trial, to be exercised in the light of the circumstances in the particular case, and this discretion will not be reviewable except for gross abuse. DeForge v. New York, N. H. & H. R. Co., 178 Mass. 59, 59 N.E. 669, 86 Am.St.Rep. 464; Com. v. Tucker, 189 Mass. 457, 76 N.E. 127, 7 L.R.A., N.S., 1056; Pope v. State, 183 Ala. 61, 63 So. 71.

"The question of the sufficiency of the preliminary proofs offered to identify the photograph or to show that it is a fair and accurate representation of the objects which it purports to portray is a matter within the discretion of the trial court. Some cases say that the determination of the trial court is final or not open to exception or review on appeal, but it is ap-parent that it was not the intention of these cases to hold that the admissibility of photographs rests finally with the trial judge." 20 Am.Jur. p. 610, § 730.

We are of opinion that the formula laid down in the opinion of the Court of Appeals is too restrictive and narrow. The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to that Court for further consideration in the light of the foregoing.

Reversed and remanded to the Court of Appeals.

FOSTER, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.