105 So.2d 695

**Dorothy CONNELL**

v.

**STATE.**

**6 Div. 510.**

Court of Appeals of Alabama.

June 17, 1958.

Rehearing Denied Aug. 19, 1958.

John Patterson, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

Skidmore & Davidson, Tuscaloosa, for appellant.

**534**

HARWOOD, Presiding Judge.

This appellant, Dorothy Connell, was the mother of Linda Connell, a four year old child. After the child's death from a brain injury the appellant was indicted for manslaughter in the first degree, and upon trial, was adjudged guilty as charged.

The evidence tends to show that on 16 February 1956 the appellant and her husband, Sergeant Connell, brought the child Linda to the office of Dr. C. E. Abbott, Jr.

in Tuscaloosa. Prior to visiting Dr. Abbott, Sergeant Connell had phoned for an appointment around 1:30 P. M., and had been told by Dr. Abbott to bring the child to his office at 2:00 P. M. Sergeant and Mrs. Connell arrived at Dr. Abbott's office around 2:30 P. M.

When Dr. Abbott examined the child "she was obviously unconscious, she was dusky blue, her skin was dry, her eyes were open, her pupils were dilated and fixed, her respiration was very shallow and slow, and I considered the child in a very critical condition."

The child was immediately taken to the Druid City Hospital where X-rays were made, and fluid was drawn from the spine. The spinal fluid was bloody.

Dr. Abbott realized that the child had a brain or spinal cord injury and advised that the child be taken immediately to a neurosurgeon in Birmingham, as the only hope for help. The Sergeant asked if they might take the child to the Air Force Hospital in Montgomery, and Dr. Abbott said they might. The doctor stated he did not expect them to get to either Birmingham or Montgomery with the child alive.

The appellant did not appear to be upset to the doctor.

During the examination Dr. Abbott observed a large bruise on the right frontal region and another on the left of the head. There were also bruises on each thigh anteriorly, and a bruise on each arm.

Dr. Abbott felt that the bruises on the head were a day or so old.

In Dr. Abbott's best judgment it was the appellant who told him at his office that the child had an epileptic seizure about 10:30 that morning, and nothing was said about the child having had a fall.

The child was brought to the Maxwell Air Force Base Hospital around 5:30 P. M. that afternoon.

An operation was performed shortly after 6:00 P. M. in an effort to relieve the pres-

sure on the brain. More than one blood clot was discovered during this operation. The child was then administered medicines in an attempt to further lower the pressure of the brain. However, the medical efforts were unsuccessful, and the child died between 3:00 and 4:00 A. M. the next morning.

Lt. Col. F. E. Foley, a medical officer at the Maxwell Hospital, testified that he performed an autopsy on the body of the child. Dr. Foley described several separate and distinct bruises or wounds he observed on the head, and except as to a healed wound on the head, it was his opinion that the bruises were between 24 and 48 hours old, were of traumatic origin, and had caused a laceration of the brain which in turn caused the death of the child.

Dr. Foley turned the brain of the child over to Captain Nunnally, another medical officer, for further examination.

Dr. Nunnally testified that he found separate and distinct hemorrhages at different sites in the brain, necessarily separate in cause and effect. In his opinion the injury to the brain was traumatic in origin, and there was more than one trauma exerted on the head.

On 23 June 1956 the appellant was interviewed in the office of the Circuit Solicitor in Tuscaloosa.

Her answers, and questions propounded by the Solicitor were recorded on a tape recorder, and then transcribed from the tape. The transcription was read over by the appellant, and then signed by her.

In this interview the appellant stated that she had gotten mad with Linda lots of times and hit her head up against a wall, but not "at the time." She did not know why she would do that. She "reckoned" such acts took place in Mobile, as they had only lived in Tuscaloosa for two weeks, and she spanked Linda once or twice in Tuscaloosa, but never bumped her head; that on the day in question Linda got up at 9 o'clock and ate breakfast, and went in the bed room to play with her younger sister and brother. About

ten o'clock she fell off a bed and the youngest child called that "Linnie" had been hurt. Appellant found Linda on the floor. She tried to hold Linda in her arms, but couldn't and left her on the floor until she got over whatever kind of fit she was having. She then picked her up and put her on a bed. She thought the child was asleep, "but she wasn't."

She thought of the times she had hit the child's head against a wall, but didn't mean to.

She had hit her head on the wall maybe six or seven times while in Mobile. She would tell her husband the child had fallen and hit her head. She was rough on Linda, and when bruises would develop she would feel awful.

She guessed these same acts took place in the trailer court in Tuscaloosa, and she knew these things may have contributed to the child's death, and she always thought she had caused Linda's death.

Linda fell off the bed about 9:30 in the morning. She called her husband around 11:00 o'clock, but he was not in. He came from work, and went by the doctor's and made an appointment about 2:00 P. M. This was after they could not awaken the child.

The State also introduced several witnesses who had lived in the trailer court in Mobile at the time the appellant and her family lived in the same court. These witnesses testified as to whippings administered Linda by the appellant at that time, as to bruises observed on the child, and as to difficulties between the child and the appellant.

By properly grounded objections, and in other ways, counsel for appellant has reserved for review the question of the sufficiency of proof of the corpus delicti prior to the admission of appellant's statement made upon the occasion of her interview in the Solicitor's office.

 As stated in the landmark case on proof of corpus delicti, Shelton v. State, 217 Ala. 465, 117 So. 8, 9:

"The corpus delicti must of course be shown independently of the confession of the accused; that is, the state must show not only the fact of a victim's death, but also that death was caused by the criminal agency of another. 30 C.J. 284, § 529; Pearce v. State, 14 Ala.App. 120, 72 So. 213; Ducett v. State, 186 Ala. 34, 36, 65 So. 351. This requirement is satisfied when it appears that death was not the result of accident or natural causes, or of suicide. 30 C.J. 287, § 531; Parsons v. State, 179 Ala. 23, 60 So. 864; Saulsberry v. State, 178 Ala. 16, 21, 59 So. 476; Stubbs v. State, 148 Miss. 764, 114 So. 827."

Prior to the introduction of the appellant's statement, the State's evidence tended to show that the child had been brought to Dr. Abbott's office actually while in extremis. In Dr. Abbott's best judgment the appellant, as well as the father, stated that the child had had an epileptic seizure. Further, neither parent mentioned any fall by the child. Finding bloody spinal fluid indicating a brain or cord injury Dr. Abbott immediately advised the attention of a neurosurgeon.

The neurosurgeon, and other medical experts, found blood clots in the child's brain at separate sites in the brain, which in their opinion resulted from separate causes, or forces, applied to the head. The child died as a result of these injuries.

■ Clearly such injuries negative that the injuries and death therefrom resulted from natural causes, or from suicide. The appellant's statement that the child's condition began with an epileptic seizure certainly does not suggest an accident, particularly since no fall was mentioned by the appellant, nor the father, in the medical history given Dr. Abbott.

■ To prove prima facie corpus delicti for the admission of a confessory statement the State does not have to negative beyond a reasonable doubt that death did not result from accident, suicide, or natural causes, but is required to show only a reasonable probability that a criminal act of another was the cause of death. Duck v. State, 38 Ala.App. 652, 92 So.2d 55. See also Snead v. State, 251 Ala. 624, 38 So.2d 576.

Our conclusion is that the evidence as to proof of the corpus delicti was entirely sufficient to authorize the court to submit the question to the jury for their determination from reasonable inferences from the evidence. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818.

There was no error in permitting the introduction of the appellant's written statement because of failure to prove the corpus delicti.

Prior to the introduction of appellant's statement Officer Fritts testified that the appellant was questioned by the Solicitor in his office in Tuscaloosa. The questions and answers were recorded by a tape recorder, and from the recording a written transcript was prepared by the Solicitor's secretary. This transcript was read over by the appellant and then signed by her. After examining the statement Fritts testified it was the same statement that was signed by the appellant on the occasion of the interview.

The voluntary character of the statements made by appellant was shown by a full predicate. However counsel argues that there was no showing that the written statement was *signed* voluntarily.

■ The statement signed by the appellant being shown to have been voluntarily made, no separate proof that she voluntarily signed the same was required. Dyer v. State, 241 Ala. 679, 4 So.2d 311; Shelton v. State, supra.

The appellant offered no evidence in the trial below.

■ At the conclusion of the State's case counsel for the appellant moved that the evidence offered by the State be excluded, and also moved for a directed verdict

for the defendant, and as grounds for such motions asserted that the State had presented no evidence tending to show that any offense or part thereof had taken place in Tuscaloosa County.

The court denied both motions.

As we interpret the doctrine of Denton v. State, 263 Ala. 311, 82 So.2d 406, this ruling on the motions is not reviewable by us where no written charge, based on failure of proof of venue, was requested.

■ Regardless venue may be proven by direct or circumstantial, evidence. Moore v. State, 30 Ala.App. 552, 9 So.2d 146.

■ The evidence presented by the State showed that the appellant and her family, of course including the deceased, had lived in Tuscaloosa two weeks prior to the date the child was taken, in extremis, to Dr. Abbott. In Dr. Abbott's opinion the bruise he observed on the deceased's head was a day or so old. Dr. Foley was of the opinion that the bruises he observed on the head were 24 to 48 hours old. Dr. Graham, the neurosurgeon who operated on the deceased testified that the clots he found in the brain were in his opinion 24 to 36 hours old, and not over 4½ days old. Further, the appellant in her signed statement "guessed" that some of her acts of violence against Linda had taken place in Tuscaloosa County.

In view of the above evidence, the jury would be fully warranted in concluding that the traumatic injuries to the child's brain resulted from blows struck in Tuscaloosa County. Part of the offense taking place in Tuscaloosa, venue was in Tuscaloosa County, even though the child died in another county. Section 94, Title 15, Code of Alabama 1940.

■ Counsel for appellant further urge as error the action of the trial court in first admitting into evidence two photographs of the deceased taken after she had been operated upon at Maxwell Hospital. These pictures were excluded by the court the following day, the court first inquiring of the jurors if any of them had handled the pictures.

Counsel however contend that the fact that the jurors had not handled the pictures does not mean they had not viewed the pictures during their reception into evidence.

Be that as it may, we have examined the two photographs. They are relevant to the issues, not only in identifying the deceased as being the child seen and attended by the doctors, but also in depicting various bruises present on the body. The wounds or scars resulting from the operation were clearly specified by the medical witnesses. There had been no massive mutilation of the body as that depicted in McKee v. State, 33 Ala. App. 171, 31 So.2d 656, when the relevant evidence pertained to an inner organ of the body, and the photograph included most of the mutilated body with the organ in question constituting only a very small portion of the photograph.

Rather, the point we are now considering is governed by McKee v. State, 253 Ala. 235, 44 So.2d 781, wherein it is stated that no error results from the introduction of a photograph of a deceased taken after an autopsy operation, even though the photograph depicts marks and incisions resulting from such operation, where the operator points out to the jury such marks necessitated by his operation.

As before stated, several witnesses who had resided in the trailer court at the time appellant and her family resided there, which was some six months prior to the removal of the Connells to Tuscaloosa, testified as to whippings administered the deceased by the appellant and as to bruises and marks observed on the deceased.

■ We have read such testimony with care. We find no instance where such testimony exceeded the allowable limits of showing former difficulties between an accused and an injured party. While the details or merits of the former difficulty,

or difficulties, cannot be brought out, yet sufficient of the details may be shown as may illustrate the gravity of the former difficulty. Spain v. State, 37 All.App. 311, 68 So.2d 53.

 Particularly is this true as to former difficulties between a minor child and parent, since the law authorizes a parent to administer such corporal punishment as the misconduct of the child seems to warrant. In such a situation a jury is entitled to have all the facts and circumstances leading up to the assault at issue, as tending to prove the animus of the parent. Therefore the fact of former whippings in such cases is admissible, but again, not the details thereof. Cameron v. State, 24 Ala. App. 438, 136 So. 418.

 Counsel for appellant further argues as error certain statements by the Solicitor in his argument to the jury.

In all but one instance the Solicitor's argument was but reasonable inference to be drawn from the evidence and did not violate forensic limits.

In the remaining instance the record shows the following:

"Mr. Zeanah: * * * Now, gentlemen, they have talked about the evidence, and making out a case. The Court has already ruled that a case of manslaughter in the first degree has been made out to be presented to you.

"Mr. Davidson: We object.

"Mr. Zeanah: That is the effect of the ruling of the Court.

"Mr. Davidson: We object.

"The Court: The Court ruled that the evidence is for the jury to determine whether it was sufficient.

"Mr. Zeanah: That is correct."

While the Solicitor's statement may have skirted the brink, the statement by the court as to the effect of its ruling obviated any prejudice. Adkins v. State, 38 Ala.App.

659, 93 So.2d 519, certiorari denied 256 Ala. 666, 93 So.2d 522; State v. Nathoo, 152 Iowa 665, 133 N.W. 129.

From our study of this record we are of the conclusion that it is free of error probably injurious to any substantial right of this appellant. The judgment is therefore due to be affirmed, and it is so ordered.

Affirmed.