282 So.2d 356

**Gary Bernard MEANS**

**v.**

**STATE.**

**6 Div. 471.**

Court of Criminal Appeals of Alabama.

June 12, 1973.

Rehearing Denied June 26, 1973.

J. Massey Relfe, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, Herbert H. Henry, Asst. Atty. Gen., Birmingham, for appellee.

TYSON, Judge.

The Grand Jury of Jefferson County, Alabama, indicted the appellant for first degree murder in the fatal stabbing of one Allen Moore. The Jury's verdict and judgment fixed punishment at life imprisonment in the penitentiary.

The evidence showed that on the morning of November 14, 1970, the appellant went to the home of the deceased in Birmingham, Alabama. Appellant left to buy a bottle of wine, and when he returned he was accompanied by Robert Nash, the deceased's brother-in-law. They were joined, a short time later, by John Williams, a cousin of the deceased. Mrs. Richard Lee Moore, wife of the deceased and a cousin of the appellant, testified that all three of the men were drinking the wine and left once to get another bottle. George Dunham, another cousin of the deceased, arrived shortly after noon. At that time Robert Nash asked Mrs. Moore for a dollar to buy some more wine. When Mrs. Moore refused, Nash stood up as if to swing at Mrs. Moore and fell and hit his mouth. Appellant and Dunham then took Nash to the bathroom to wash the blood from his mouth. The deceased had remained in the bedroom up until this time. Mrs. Moore testified that while Nash was in the bathroom he was talking in a very loud voice, using vulgar language about getting the dollar. At this time the deceased came out of the bedroom and went into the bathroom. Mrs. Moore heard the deceased tell Robert that he had to stop hitting his wife, even though she was his sister. She further testified that she heard a slap from the bathroom. An argument then broke out between the deceased and the appellant. Mrs. Moore testified that appellant and George Dunham picked up chairs as if to strike each other, but that no blows were struck. Mrs. Moore became very upset and asked appellant and Dunham to leave. She and the deceased, accompanied by Nash and Johnny Williams, then left to go to Mrs. Moore's grandmother's house. On the way they stopped once at a poolroom, and as the deceased was going in, he passed the appellant coming out. After one more stop at a friend's house, they arrived at the house of Mrs. Moore's grandmother. As they approached the house, Mrs. Moore's aunt, Betty Davis, and cousin, Peggy Brown, were standing in the door with appellant standing behind them. Mrs. Moore testified that they were asking why Allen had jumped on Robert. The deceased replied, "Yeah, I slapped you and I will slap you again." At this point appellant said "You made a mistake," and stabbed the deceased. The victim was then taken to Carraway Hospital where he was admitted and later died.

Mrs. Moore further testified that the deceased did not have a weapon, nor did he attempt to strike the appellant.

John P. Helton, a deputy coroner, testified that he had been employed by the Jefferson County Coroner's office for five years, and before that had been employed by the Jefferson County Sheriff's Department for fifteen years. He stated that he had examined the body of Allen Moore on November 14, 1970, at the Carraway Hospital. He testified that during the examination he observed a large "surgical incision" on the right side of "the chest that had been sewed back up," and a three-inch stab wound in the right side of the neck. He then identified a photograph, State's Exhibit No. 1, as accurately depicting the body at the time of his examination, and showing the wound which he described. It was then admitted into evidence. Mr. Helton further stated that he had had occasion to examine many knife wounds, and from his experience as a coroner, he knew the vital body organs. He testified that in his opinion the death of Allen Moore was caused by a severed carotid artery and hemorrhaging.

Peggy Brown testified that she saw appellant stab the deceased. After the blow was struck, she observed the victim step back, throw open his coat, and pull the blade out. She stated, however, that she did not see the knife when it fell to the ground. She stated that the knife the deceased pulled from his shoulder was similar to a steak knife.

Sergeant O. C. Ellard then testified that he had investigated the homicide of Allen Moore on November 14, 1970. He identified State's Exhibit No. 3 as the blade found in his presence at the scene of the homicide by Lugenia Brown. It was found by the porch in front of the residence. Sergeant Ellard testified that he saw Mrs. Brown pick it up and then hand it to him, and that it had been under his custody and control since that date. It was then introduced into evidence.

Reginald Davis, who also witnessed the stabbing, testified that the knife used was a steak knife.

I

Appellant first contends the trial court erred in allowing into evidence the photograph of deceased, marked State's Exhibit No. 1. He argues that the photograph is highly prejudicial because of the "surgical incision" that appears, and further that it was taken at too remote a time and doesn't show the victim in substantially the same condition as he was at the scene of the crime.

In McKee v. State, 253 Ala. 235, 44 So. 2d 781, the Court stated:

"'* * * The sole question is whether the physical evidence will assist, and not mislead, the jury in understanding the matter before them. It is not necessary that the object sought to be admitted be in exactly the same condition as at the time of the occurrence of the fact that it is intended to illustrate; such a requirement would make evidence of this nature inadmissible in practically all cases, since it is hardly ever possible to reproduce conditions exactly . . . There was no error in admitting in evidence a photograph of the deceased, taken after the performance of an autopsy, even though the photograph showed marks of incisions made for the purposes of the autopsy, the autopsy surgeon pointing out to the jury the marks resulting from his examination.' . . ."

Here the deputy coroner testified on cross-examination as follows:

"Q Now, Coroner Helton, please, standing where you are, I know that there is some more marking on the body down this line. In your experience as Coroner, I imagine you have had an opportunity to observe a surgical incision?

"A Yes, sir.

"Q In your opinion, is this a surgical incision?

"A Yes, sir.

"Q I imagine, also, in your capacity as coroner you have had an opportunity to observe surgical sutures?

"A Yes, sir.

"Q These marks—and I'm pointing out several different places—would these incisions have been made by or would they be surgical sutures?

"A Yes, sir.

"Q In your opinion, this incision would be made by a surgical instrument?

"A Yes, sir."

■ We are of the opinion that the marks resulting from surgery were sufficiently pointed out to the jury. Gaddis v. State, 39 Ala.App. 630, 106 So.2d 268; Connell v. State, 39 Ala.App. 531, 105 So. 2d 695, cert. den. 268 Ala. 692, 105 So.2d 700; and McKee v. State, supra.

■ We are also of the opinion that appellant's argument that the photograph was taken at too remote a time is not well founded. Hurst v. State, 277 Ala. 686, 174 So.2d 325.

■ The photograph in question was properly admitted as corroborating the testimony of the coroner as to the size and location of the wound in question. Palmore v. State, 283 Ala. 501, 218 So.2d 830; Grant v. State, 250 Ala. 164, 33 So.2d 466; Smarr v. State, 260 Ala. 30, 68 So.2d 6, and cases cited therein.

## II

■ Further, we find no error in admitting the testimony of the deputy coroner over objection concerning the cause of death. His experience as a deputy coroner and in examining knife wounds was here clearly shown. Willingham v. State, 50 Ala.App. 363, 279 So.2d 534; Snow v. State, 50 Ala.App. 381, 279 So.2d 552; and

Thigpen v. State, 50 Ala.App. 176, 277 So. 2d 922.

## III

Appellant also cites as error the action of the trial court in allowing into evidence the knife, marked Exhibit No. 3, because of lack of proper identification.

■ Sergeant O. C. Ellard testified that the knife was found in his presence at the scene of the crime, and had been in his custody and control since that time. The exhibit, which appears to be a bloodstained steak knife with the handle missing, was further identified by another witness as being the same or similar knife as the one used to stab the deceased. The fact that the officer himself did not actually find the blade would not affect the admissibility. Even though the witness could not say positively that this knife was the exact one used in the fatal stabbing, such should not prevent the knife from being introduced into evidence for the consideration of the jury. James v. State, 17 Ala.App. 490, 86 So. 131; Patton v. State, 246 Ala. 639, 21 So.2d 844; Stinson v. State, 238 Ala. 240, 190 So. 275; and Hawkins v. State, 29 Ala.App. 221, 195 So. 762, cert. den. 239 Ala. 532, 195 So. 765.

## IV

Appellant's written requested charges numbered 2, 7, 8, 11, and 1, 3, 5, 6, and 14, concerning self-defense were refused. We find no error in their refusal as these charges were fully and substantially covered in the trial court's oral charge, or in the other written charges given at the request of the appellant. Title 7, Section 273, Code of Alabama 1940.

We have carefully searched the entire record, as required by Title 15, Section 389, Code of Alabama 1940, and find no error therein. The judgment is thus due to be and the same is hereby

Affirmed.

All the Judges concur.