This is an appeal by an indigent from a conviction for assault with intent to murder, wherein the appellant was convicted by a Montgomery Circuit Court jury and sentenced to twenty years imprisonment.
This appeal is submitted to this court on briefs, and the pertinent facts are as follows:
Willie Moulton testified that he was the owner of the Moulton Cafe in Montgomery, Alabama, on the night of July 15, 1976. He stated that on the night in question there was a "juke box" and a "record hop" with door prizes. The prizes were two quart's of wine and one-half gallon of gin. As the patrons entered the cafe, they were handed a number and, later, three numbers were drawn to determine the winner. No one claimed the third number drawn, so another number was drawn and the holder was awarded the one-half gallon of gin.
After the gin was awarded, Moulton testified that the appellant came into the cafe and demanded the gin claiming that he held the first number drawn for it. After appellant was denied the prize, Moulton stated that the appellant cursed him and started a fight with him. According to Moulton the appellant then kicked him and threw a bottle at him. Moulton then got a pistol from behind the counter and fired a shot into the air.
Moulton testified that, when the appellant left the cafe, he shouted that he would be back and shoot someone. Moulton stated that the appellant left the cafe with some other people but, as they drove away, the appellant warned that he would return, and did not care "who I shoot when I get there." According to Moulton, the appellant was wearing an "old flopped down white hat and white shirt and pair of blue-jeans."
About an hour later, Moulton was shot in the face, resulting in permanent blindness in both eyes.
Emma Durisseau testified that she was at the cafe on the evening in question and first recognized the appellant during the fight, when he kicked Moulton in the back. She explained that the appellant was arguing about a raffle ticket, and threw a bottle at Moulton, after which Moulton shot into the air. She stated that when the appellant rode away from the cafe in a car, he "screamed out he would be back and he would be ready to know who G__ d___ he shoot." She also stated that the appellant was wearing "a round white hat pulled down and jeans and a light-colored shirt." During cross-examination, Durisseau admitted that she noticed the appellant for the first time, on the night in question, but *Page 346 
stated that she was sure he was the person who threw the bottle at Moulton. She also testified that when the appellant and the others left, "Somebody in the car yelled out. `We are going to get a shotgun and come back and shoot everybody.'"
Minnie Williams testified that she was sitting with Willie Washington, on the hood of a car parked in front of the Moulton Cafe, when the shooting occurred. She stated that she first saw the appellant when he came around the corner of the building with a shotgun. According to Williams, she observed the appellant looking through the window of the cafe. When asked how long she observed the appellant looking through the window, she stated:
 "I was talking to Willie so I don't know . . . I don't know, I looked around this one and that's when I saw him, and that's when the shotgun went off. That's all I saw. I was on the ground."
Further, she said that she had identified the appellant from five photographs, but admitted, during cross-examination, that the identification was made about a year after the shooting. She also admitted that she had not seen the defendant since the night in question, but did say, "I saw him when he fired that's when I fell."
Detective Billy Knighten, of the Montgomery Police Department, testified that he investigated the shooting at the Moulton Cafe and stated that he found a white cap near the side of the building, close to the door that leads to the kitchen.
Further, Knighten identified exhibits 11, 12 and 13, and stated that, on the inside of the Moulton Cafe, just left of the front door, he found a piece of wadding which had "come out of a four ten gauge shotgun." He also stated that he found a part of the wadding on the inside of the cafe near the window. Knighten said he found a part of the "birdshot" in the wall.
During the trial Clifford King, an investigator for the district attorney's office, identified certain photographs describing the scene at the Moulton Cafe.
After being recalled to the stand, he identified the shotgun, State's Exhibit 14, and stated that it had been brought to his office by the appellant's mother at his request. He explained that the shotgun was a "four hundred and ten gauge single shot."
Detective Leo Blankenship of the Montgomery Police Department stated that he did the "follow up" investigation of the shooting at the Moulton Cafe. According to Blankenship, he asked Minnie Williams to attend a photographic lineup, in which she positively identified the appellant.
The State Toxicologist, Thomas Hopen, testified that State's Exhibits 11, 12, 13 and 14 had been in his possession. He stated that these were; a "plastic collar," "paper wadding," and a "pellet," which were all "consistent with having been fired out of a fourteen gauge shotgun shell." However, he explained that the pellet could have been fired from any gauge shotgun. Further, he explained that, due to the fact that the shotgun was a "smooth bore weapon," there was no method to "make a comparison of anything fired through that barrel and say it had been definitely fired in that weapon."
Gussie Lee Humphrey, the defendant's mother, identified the shotgun, State's Exhibit 14, and stated that it came from her home. She denied that the appellant had taken it on the night in question, or that he had left the house again after he had arrived home. She testified that the gun had a broken stock and was in that condition at the time she had acquired it.
The appellant's sister, Ivory Pearl Humphrey, was living at the Humphrey home at the time of the shooting and confirmed her mother's testimony.
The appellant took the stand in his own behalf, and denied that he had kicked Moulton or thrown a bottle at him. He maintained that he left the cafe in the car and denied that anyone in the car had made any threats. The appellant stated that he did not return to the cafe and did not shoot Moulton. *Page 347 
 I
The appellant contends that the shotgun, which belonged to the appellant's mother, should not have been introduced into evidence for three reasons; first, it was not properly identified as the weapon used in the assault; secondly, the chain of custody was not established; and finally, it was not relevant to the issues on trial.
Regarding the appellant's assertion that the shotgun introduced was not relevant nor properly identified, we find that the State offered the testimony of Minnie Williams to the effect that the appellant had a shotgun when he returned to the cafe. Further, Detective Knighten and the toxicologist stated that the wadding from State's Exhibit 11 was consistent with having been fired from a 410 shotgun.
The State toxicologist also testified that State's Exhibit 14, was a 410 shotgun, and that, although he stated that "the pellet [found at the scene] could have been fired from another gauge shotgun," he also stated that it could have been fired from the 410 shotgun.
The collar and the wadding, which were consistent with being fired from a 410 shotgun were found in the cafe after the shooting. There was also evidence that the defendant had access to a 410 shotgun. His mother, during her testimony, admitted that she had owned the 410 shotgun, admitted into evidence as State's Exhibit 14. We also note that Williams testified that she saw the appellant fire a shotgun into the cafe.
 As stated in Corpus Juris Secundum: "Evidence to show that accused owned, possessed, or had access to, tools, implements, weapons, or any articles with which the particular crime was or might have been committed is relevant, at least where accused is identified as having been at or near the scene of the crime at about the time of its commission, as is also evidence that he owned or had in his possession weapons with which the crime was or might have been committed prior to, or after, the commission of the crime. On the other hand, evidence of possession by accused of weapons, or various poisons, not in any way connected with the crime charged is inadmissible." 22A C.J.S. Criminal Law § 611.
In Lewis v. State, Ala.Cr.App., 335 So.2d 426, this court, in a footnote, cited Douglas v. State, 42 Ala. App. 314,163 So.2d 477, which stands for the proposition that a jury may properly compare markings on shotgun shells and, although shotgun marks may not be as distinctive as "riflings," such a deficiency is a question of the weight to be given them. Therefore, the introduction of the shotgun was relevant, and it would be for the jury to determine the weight it would give to the shotgun, in considering the appellant's guilt.
This court, in Means v. State, 51 Ala. App. 8, 282 So.2d 356, observed that, even though a witness could not say positively that the knife introduced into evidence was the same knife used to stab the deceased, it should not be excluded from the jury's consideration, in view of the fact that the witness did say it was the same or a similar knife. See also, Shiflett v. State,265 Ala. 652, 93 So.2d 526.
Under these facts and the authorities cited above, it is our judgment that, because the appellant had access to the shotgun owned by his mother and was seen at the time of the shooting with a shotgun in his possession, the admission of the shotgun was proper. The shotgun was relevant as possibly being the weapon used at the time of the shooting. At any rate, the shotgun was relevant to the issues at trial, and the weight to be given to this item of evidence was for the jury to determine.
Turning to the appellant's assertion that a proper chain of custody was not shown, we find that Clifford King testified that he had requested the appellant's mother, prior to trial, to bring the shotgun to his office. Further, the appellant's mother and sister testified that the weapon introduced was that belonging to the appellant's mother. She also identified the gun as hers because she recognized the shotgun's broken *Page 348 
stock, which she said it had at the time she acquired it. She also explained that the hand guard on the shotgun was a "little loose."
Based upon the foregoing, we hold that, because the appellant's mother identified the shotgun as belonging to her, any question as to whether it was the weapon she had given to the investigator was resolved.
The purpose of establishing a chain of custody is to show, to a reasonable probability, that no one had tampered with the shotgun which was introduced into evidence. See Sexton v.State, Ala.Cr.App., 346 So.2d 1177; 22A C.J.S. Criminal Law § 709. Here, there is no contention made that the shotgun had been tampered with, nor was it shown that the police had a motive or an opportunity to tamper with the weapon. Bell v.State, Ala.Cr.App., 339 So.2d 96.
The shotgun was introduced merely to show that the appellant had access to a 410 gauge shotgun. No tests results were introduced concerning the shotgun, and the jury was entitled to consider this item of evidence and to allow it whatever weight they deemed sufficient under all the facts presented to them in the case.
As to the relevancy of the admission of the shotgun, we are of the opinion that the court correctly admitted it into evidence. The shotgun had a reasonable tendency to prove or disprove a material fact in issue at the trial. See also,Manson v. State, Ala.Cr. App., 349 So.2d 67; Lucy v. State,49 Ala. App. 116,269 So.2d 134; McElroy, Alabama Evidence, § 21.01 (1), at pp. 15-16.
The determination of whether the shotgun was relevant to the issues at trial was addressed to the trial court's discretion. Without a showing of an abuse of that discretion, and no such showing has been made, the evidence, in our judgment, was correctly admitted. See Strickland v. State, Ala.Cr.App.,348 So.2d 1105.
 II
Appellant complains that the trial court erred in allowing the results of the photographic lineup into evidence. He argues that the pictures were referred to by number on information sheets and that some of the numbers had been changed. Picture No. 1, the appellant claims, "was listed on the form as being that of a 57 year-old negro man, when it was actually a picture of a young man."
From the transcript of evidence, we have found no indication that anyone had changed the numbers on the photographs. Further, Williams, in identifying the appellant's picture, from aught that it appears, was unaware of any change in numbering.
Regarding the appellant's insistence that the information on the sheets concerning "a 57 year-old black man" was such that would have tainted the identification procedure, we find that the evidence showed the appellant to be 23 years of age. Also, the photographs shown to Williams were of persons whose ages were 20, 31, and 24, and the appellant, whose age was then unknown, but he was considered to be young. In any event, the ages of all of the parties in the photographic lineup were comparable to appellant's.
We fail to see how this prejudiced the appellant in any way, especially in view of the fact that Williams was not aware of the ages written on the backs of the photographs. Further, the fact that Williams was an eyewitness to the shooting, and saw the appellant shoot into the building with a shotgun was sufficient to dissipate any possible taint of the identification, if any existed. See Cannon v. Alabama, 5 Cir.,558 F.2d 1211, 1217 n. 13. Considering the totality of the circumstances, we find that the use of the pictures was proper.Caver v. Alabama, 537 F.2d 1333; Williams v. State, 51 Ala. App. 1, 282 So.2d 349.
 III
In reviewing the record and transcript of evidence we are of the opinion that the evidence was sufficient to present a question of appellant's guilt for the jury and would support the jury's verdict. Therefore, the court's denial of appellant's *Page 349 
motion to exclude, and his motion for a new trial was proper. The judgment of conviction by the Montgomery Circuit Court is due to be affirmed.
AFFIRMED.
All the Judges concur.