Charles O. Trahan was charged in two indictments with the first degree murder of Jimmy Ray Foster by shooting him with a rifle in violation of § 13A-6-2, Code of Alabama 1975 and in the second indictment with theft of property in the first degree. Upon motion of the District Attorney, the two cases were consolidated for trial. The jury found the appellant not guilty of the offense of theft of property. However, the jury found the appellant guilty of murder as charged in the indictment. Following a sentencing hearing, the trial court set sentence at life imprisonment in the penitentiary.
On the morning of October 1, 1982, Jimmy Ray Foster, the victim in the case, had gone with his business partner, one Leon Collins, to pick up payment from Scott Paper Company for a load of logs which he had delivered to them. The two men received a check for $313.20 and then went and cashed this check, took $24.00 from the proceeds and paid a laborer, one Mike Parnell, then agreed to divide the monies three ways between Foster, Collins and the appellant, Charles O. Trahan. In route home, Foster and Collins stopped and purchased some beer and then Foster dropped Collins at his home and Foster returned to his own home. Shortly after Foster had left that morning, his wife, Donnie Foster, left home to go to a flea market which was about 100 yards away from the Foster home. After she left, the appellant, who had been living with the Fosters and Mrs. Foster's mother, one Mrs. Creola Roberts, also departed. The appellant left and went into Grove Hill to purchase some tags for his vehicle and then returned. When the appellant returned to the Fosters' home only two persons were present, the victim, Jimmy Ray Foster, and his mother-in-law, Mrs. Roberts.
Upon his return, Trahan asked Foster for his part of the proceeds for the sale of the logs which they had cut during the prior week. Foster was in a bad humor and cursing and had drunk two beers. Foster told Trahan to leave the house, to get his belongings, rifles and whatever other properties he had and leave. Trahan then went into the room where he had been staying to gather up his belongings and Foster threw Trahan's part of the money on a table, cursing. *Page 1105 
Mrs. Roberts stated that she tried to calm the men down, but started out of the house as she was elderly, calling for her daughter. She heard a loud "boom" sound which knocked her into a chair, she stated. When she looked around she saw Foster lying on the floor and the appellant with a gun.
According to the appellant, he had returned into the room where Foster was, with his suitcase and two rifles. He stated that he dropped the .30-.30 rifle, breaking the sight. He then leaned a .22 rifle he was carrying against the wall near a refrigerator and sat down at the table to see if he could repair the sight on the .30-.30 rifle. He stated that the argument then developed between him and Foster over the money.
Trahan testified that he saw Foster stand up and move as though he were reaching for the .22 rifle which was against the wall. Trahan stated that he then lifted up the .30-.30 rifle, cocked it and told him, "No, no," but Foster moved toward the other gun and that, as he was holding the rifle, Mrs. Roberts bumped him and the rifle went off. Mrs. Roberts testified she was leaving the room going out of the door when the rifle went off.
The toxicologist's testimony indicated that the victim, Jimmy Ray Foster, was shot once with a .30-.30 rifle bullet which passed between his eyes and caused instant death.
Trahan, realizing that Foster was dead, testified that he became frightened, took the monies that had been given to him by Foster, grabbed the two guns and the suitcase and put them in a truck and left the premises. He later abandoned the vehicle and contacted his relatives within a two month period and subsequently turned himself in to the FBI. Trahan was returned to Washington County for trial.
 I
The appellant contends the trial court erred in consolidating the two indictments for trial in this cause. Rule 15.3 Temporary Rules of Criminal Procedure of Alabama, reads as follows:
 "(a) Joinder. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(i) are of the same or similar character; or
 "(ii) are based on the same conduct or otherwise connected in their commission; or
 "(iii) are alleged to have been part of a common scheme or plan."
Offenses which are based on the same conduct or otherwise connected in their commission may be joined as hereinabove noted. Likewise, acts or declarations, which are a part of the res gestae or were substantially contemporaneous and so closely connected that they illustrate one and the other, are properly admissible as part of the res gestae or to, in effect, show one continuous transaction or to give the entire picture. Since the two offenses were so closely related and arising from the same continuous course of conduct, we see no error in the trial court's joining the two offenses. See Willingham v. State,261 Ala. 454, 74 So.2d 241 (1954).
Moreover, the same jury found the appellant not guilty of the theft of property charge. We see no error.
 II
Prior to trial, the appellant filed a motion for a change of venue alleging widespread publicity concerning the offense at issue in the various media.
As noted by this court in Robinson v. State, 430 So.2d 883
(Ala.Cr.App. 1983), the trial judge heard all the evidence and the arguments with reference to this change of venue motion, and determined that the climate was not one of inherent prejudice against this appellant and that a fair and impartial trial could be provided in Washington County. This determination of whether or not to grant a change of venue is a matter generally left to the sound discretion of the trial court. Mathis v. State, 52 Ala. App. 668, 296 So.2d 755 *Page 1106 
(1973), cert. denied, 292 Ala. 732, 296 So.2d 764 (1974);Flurry v. State, 52 Ala. App. 64, 289 So.2d 632 (1973), cert. denied, 292 Ala. 720, 289 So.2d 644 (1974); Acoff v. State,50 Ala. App. 206, 278 So.2d 210 (1973); Turner v. State,410 So.2d 458 (Ala.Cr.App. 1981). This is generally the law because the trial court is in the best position to weigh the evidence and "evaluate the prejudicial atmosphere" surrounding the accused's case. Botsford v. State, 54 Ala. App. 482, 309 So.2d 835, cert. denied, 293 Ala. 745, 309 So.2d 844 (1975); Burnett v. State,350 So.2d 718 (Ala.Cr.App. 1977). As was the case in Burnett, 350 So.2d at 722:
 "It is to be noted that the trial judge was presiding in his own circuit and was not a visiting judge. He, in a sense, was at home and no doubt was familiar with existing sentiment in the county and the extent of any hostile atmosphere toward defendant, to the end that it might preclude him from obtaining a fair trial and an unbiased verdict. [Citations omitted.] The trial judge was in a position to evaluate any existing sentiment adverse to defendant's right to a fair and unbiased jury panel to try his case."
Consequently, we have reviewed the change of venue evidence in search of any clear or gross abuse of discretion on the part of the trial court and have found none. Botsford v. State, supra; McLaren v. State, 353 So.2d 24 (Ala.Cr.App.), cert. denied, 353 So.2d 35 (Ala. 1977). From our review, we have concluded that, although the appellant zealously and earnestly tried to establish, through witnesses, news media accounts, and arguments, that the "general citizenry" of Washington County was prejudiced against the appellant, himself, the evidence presented does not demonstrate any popular passion or prejudice against this appellant that might have prevented him from receiving "a fair and impartial trial." Mathis v. State, supra;Botsford v. State, supra; McCray v. State, 395 So.2d 1057
(Ala.Cr.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981).
See also, Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290,53 L.Ed.2d 344 (1977) and Carroll v. State, 440 So.2d 343
(Ala.Cr.App. 1983) and authorities therein cited.
 III
The appellant's contention that the jury was improperly allowed to separate during trial is without merit.
Section 12-16-9 (d) states: (Code of Alabama 1975 as amended 1982).
 "In the prosecution of any noncapital felony the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, provided that the court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury and the jury shall not be informed which party, if any requested separation or sequestration. (Acts 1943, No. 384, p. 358; Acts 1982, No. 82-566.)"
There is no presumption that an accused is prejudiced by allowing the jury to separate. See, Reeves v. State,432 So.2d 543 (Ala.Cr.App. 1983).
In the case at bar, the appellant was being tried for first degree murder which is not a capital offense. The trial judge was careful at each recess and on conclusion of each day's proceedings to carefully charge the jury not to discuss the case with anyone or to have any contact with any news media or any of their friends or acquaintances during the trial. There is no contention or showing nor was there any effort made during the trial to demonstrate that anyone contacted any of the jurors or that they were, in fact, influenced by anything written or spoken through any media. We have carefully examined this record and find that the appellant has failed to demonstrate to this court that he was prejudiced by reason of the failure of the trial court to require sequestration of the jury in this *Page 1107 
cause. Therefore, we can find no error with reference this contention. Willis v. State, 441 So.2d 1030 (Ala.Cr.App. 1983).
 IV (a)
The appellant calls attention to the excusal by the trial judge of Mrs. Lois Grimes as a juror during the course of the trial due to the death of a family member. (R. 166-167).
 "THE COURT: This is Mrs. Lois Grimes. I believe your husband's family member died today?
"MRS. GRIMES: On his side of the family.
 "THE COURT: You need to go to Andalusia tomorrow; is that correct?
"MRS. GRIMES: That's where the funeral will be.
 "THE COURT: Mrs. Grimes has asked that the Court excuse her due to the death in the family and if ya'll want to have any comment for the record, you may do so, anybody want to comment?
"MR. McPHEARSON: Judge, that's fine with us.
 "THE COURT: We have two alternate jurors. Due to the death in her family the Court feels it only fair she be excused for tomorrow. Mrs. Grimes, I'm going to excuse you. I believe John said you needed off tomorrow and Wednesday?
"MRS. GRIMES: I didn't get to talk to him.
 "THE COURT: I'm going to excuse you for this case. You will not have to come back tomorrow. If you can be back Wednesday fine, if not we will see you Thursday We will excuse Mrs. Grimes due to the death in her family.
"MR. LAURIE: For the record enter an objection.
 "THE COURT: Show the objection, the Defendant objects to the Court excusing juror Lois M. Grimes.
"(The PROCEEDINGS WERE RECESSED FOR THE DAY.)"
As noted above, two alternate jurors were selected just before trial.
It is clear from examining the above colloquy that the trial judge realized that Mrs. Grimes was required to attend the funeral in her family. This was not an abuse of the discretion of the trial judge in so ruling. Winstead v. State, 53 Ala. App. 222, 298 So.2d 642 (1974), cert. denied, 292 Ala. 761,298 So.2d 646 (1974).
The applicable Alabama Statute authorizes the trial court in its discretion to excuse jurors when they are no longer able to perform their duties. Such is clearly the case in the instance above set forth. We find no error. United States v. Smith,550 F.2d 277 (5th Cir. 1977), cert. denied Wallace v. UnitedStates, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977).
 IV (b)
At the hearing on the appellant's motion for new trial, his attorney presented the testimony of one Freda Nichols (R. 322-327), who was the sister of the appellant, Charles Trahan. Mrs. Nichols testified that she recognized one of the jurors who served at trial as a Mrs. Paralee Woodyard.
Mrs. Nichols testified that she recognized Mrs. Woodyard because she had seen her on five or six occasions some five or six years previously when the victim Jimmy Ray Foster and his wife, Donnie Foster, operated a small store from a trailer which they owned at that time. Mrs. Nichols indicated that Mrs. Woodyard would have known the victim in the case from having gone in the store on several occasions. In response to question, Mrs. Nichols estimated that she had seen Mrs. Woodyard in the store perhaps four or five times, maybe a half dozen. (R. 326).
The District Attorney indicated he had been unable to subpoena Mrs. Woodyard but that, based upon the testimony presented, this was such a casual acquaintanceship that he did not believe it necessary to present any testimony on this point. The trial court found no error or prejudice by virtue of this slight acquaintanceship. We think the trial court's ruling on the motion for new trial in this respect was entirely correct. Smithson v. State, *Page 1108 50 Ala. App. 318, 278 So.2d 766 (1973) and authorities therein cited. See also, Sanders v. Scarvey, 284 Ala. 215,224 So.2d 247 (1969).
 V
The appellant asserts as error that the trial court should not have admitted the testimony of Mrs. Creola Roberts, the mother-in-law of the victim and grandmother of the appellant in this cause.
A preliminary hearing had been conducted in this cause at which Mrs. Roberts had testified and been cross-examined, in fact, by the appellant's counsel, who also represented appellant on trial and on this appeal.
This point is discussed in Wyatt v. State, 35 Ala. App. 147,46 So.2d 837 (1950), cert. denied, 254 Ala. 74, 46 So.2d 847
(1950), where the court stated:
 "The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, is permanently absent from the State, or becomes unavailable by reason of claim or privilege at the second trial." (Authorities omitted).
See also, Parker v. State, 51 Ala. App. 362, 285 So.2d 526
(1973), cert. denied, 291 Ala. 795, 285 So.2d 529 (1973).
In the case at bar, Mrs. Roberts had testified at preliminary and her testimony from the preliminary hearing was read into the record, over the objection of the appellant. In this cause, the appellant's counsel was given full opportunity to cross-examine Mrs. Roberts and did so and we find no error as this was an adequate transcription of the preliminary hearing of her testimony. Mrs. Roberts had died between the time of the preliminary hearing and the trial in chief in this cause. We see no error. Potts v. State, 426 So.2d 886 (Ala.Cr.App. 1982), affirmed, 426 So.2d 896 (Ala. 1982).
We are of the opinion that the appellant has failed to show here that he has "suffered prejudice", constituting actual injury, by the use of Mrs. Roberts' testimony at the trial in chief. See also, Bryant and Williams v. State, 49 Ala. App. 359,272 So.2d 286, cert. denied, 289 Ala. 740, 272 So.2d 297
(1972), cert. denied, 412 U.S. 922, 93 S.Ct. 2744,37 L.Ed.2d 149 (1973).
 VI
The appellant next asserts as error that, in his pretrial motion for discovery, he requested copies or that he be allowed to examined all photographs made at the crime scene or of the victim. The trial court had granted this request in its original ruling. Prior to trial, the court made inquiry of the prosecution as to whether they intended to introduce photographs of the body and of the crime scene, to which the District Attorney replied, "Yes, sir." (R. 15). The trial court at that point directed the District Attorney to show them to the defense counsel and that they should be made available to him that day, meaning the day of trial. It was brought out in its discussion with the trial court that the District Attorney had originally requested that these photographs be available before trial and be sent to his office. However, it was only discovered a day or two before trial that the photographs had not been developed and the District Attorney then called the Mobile Crime Lab and asked that they be sent up immediately. At trial the District Attorney indicated that he received the photographs on the morning of trial, just before the trial started, and that these were made available to defense counsel for him to look over.
Moreover, these photographs were simply cumulative of the testimony and in corroboration of the testimony of Mrs. Roberts and the appellant himself. They simply showed the entrance wound on the body of the victim and the location of the furniture within the kitchen of the house where the shooting took place.
Mere gruesomeness of photographs which simply tend to corroborate the location of the wound are not to be rejected as evidence merely for these reasons. Means v. State, 51 Ala. App. 8, 282 So.2d 356 (1973), cert. denied, 291 Ala. 792, *Page 1109 282 So.2d 359 (1973) and authorities therein cited; Ellenburgv. State, 353 So.2d 810 (Ala.Cr.App. 1977). We find no error in the admission by the trial court of the photographs, nor do we find that any prejudice resulted from the failure of the District Attorney to have these photographs available to be inspected before the morning of trial.
 VII
The appellant contends that the State failed to establish a proper chain of custody as to the .30 caliber bullet fragment and jacket which had been removed from the skull of the victim.
We find from the examination of the testimony of Richard Dale Carter, the firearms examiner, that he had, in fact, received this from Dr. LeRoy Riddick who had removed the bullet from the skull of the victim. Mr. Hardin had also established that he received this from Mr. Carter. In examining this record we find that a proper chain of custody was established by the State and therefore the bullet which caused the death of the victim was properly admitted into evidence. Williams v. State,375 So.2d 1257 (Ala.Cr.App. 1979), cert. denied, Williams v. State,375 So.2d 1271 (Ala. 1979).
 VIII
Appellant asserts as error that the trial court failed to give certain of his written requested charges. Record 298-299 reveals the following:
 "THE FOLLOWING OCCURRED OUTSIDE THE PRESENCE OF THE JURY.)
 "THE COURT: Any exceptions other than not giving your requested charges?
 "MR. LAURIE: The Defendant objects to the Court's refusal to give Defendant's requested charges one, two, three, four, five, seven, eight, nine, ten, eleven, twelve, fifteen, sixteen and seventeen based upon the grounds that they are true statements of the law and that the Defendant is entitled to have them given to the jury in this case.
 "MR. McPHEARSON: No objections, Judge, the Court was outstanding in its charge."
As noted above, the appellant objected to the court's refusal to give the written charges, but in no wise did the appellant state any specific grounds for his objection to this refusal.
Where a defendant objects to the trial court's refusal or omission to charge on a particular subject, as above, the proper procedure is to request a written charge. Hollis v.State, 399 So.2d 935 (Ala.Cr.App. 1981). However, upon the court's refusal to so charge, the defendant must both call the trial court's attention to the specific refused written charge and set out specific grounds for his objection to the refusal of such charge. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982). Because appellant failed to set forth any grounds for his objection, this matter is not before the court for review. Allen, supra.
Moreover, we have examined the refused charges carefully, and find that they were either fully and adequately covered by the oral charge or other given charges, and were therefore repetitious, or were affirmative in nature, or invasive of the province of the jury, or not properly based upon the applicable law. Section 12-16-13, Code of Alabama, 1975. We find no error.
 IX
Finally, the appellant argues that the sentence given by the trial judge was too severe and amounted to an abuse of the trial court's discretion. The appellant states that to sentence him to life imprisonment is to impose harsh and cruel punishment.
We do not agree. It is within the permissible limit of the statute for first *Page 1110 
degree murder to sentence the appellant to life imprisonment. It is not within the jurisdiction of this court to review sentences which are set within statutory limits. Wilson v.State, 268 Ala. 86, 105 So.2d 66 (1958); also, Jenkins v.State, 367 So.2d 587 (Ala.Cr.App. 1979), cert. denied,367 So.2d 590 (Ala. 1979).
We have carefully examined each issue raised by the appellant on this appeal and find no merit in his contentions. We have examined this record and find it free of error. The judgment of the trial court is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.
 *Page 233