# Burney *v.* The State.

*Indictment for Receiving Stolen Money.*

1. *Accomplice; corroborating evidence; charge invading province of jury.*—On a prosecution for receiving stolen money, a witness who, according to her own testimony, stole the money at the instigation of the defendant, and gave it to him, having further testified that, when he came back again, and gave her a message which purported to come from her mother, as had been agreed upon between them, she replied, *"There aint no more to get;"* held, that the testimony of another witness, who overheard this remark, but heard nothing else, would be corroborative evidence tending to connect the defendant with the commission of the offense (Code, § 4476), if the jury believed that it referred to the money; but that this was an inference of fact which only the jury could draw, and which the court could not assume as matter of law in instructions to them.

2. *Sufficiency of indictment.*—An indictment for receiving stolen money (Code, § 3794), must aver the number and denomination of the coins, or some of them, or must allege that the same was unknown to the grand jury; and an averment that it was "two hundred dollars in gold coin," without other descriptive words, is not sufficient.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case contained two counts, the first of which alleged that the defendant, Wes. Burney, "did receive, conceal, or aid in concealing two hundred dollars in gold coin of the United States, the personal property of James D. Sikes, knowing that it was stolen, and not having the intent to restore it to the owner;" and the second, that he "felcniously took and carried away two hundred dollars, the personal property of James D. Sikes." The defendant pleaded not guilty, without objection to the indictment. The jury returned a verdict in these words: "We, the jury, find the defendant guilty, and assess the value of the property stolen at $75." On the trial, as the bill of exceptions shows,

VOL. LXXXVII.

[Burney v. The State.]

said Sikes testified to the loss of his money, stating that it was wrapped in a cloth, and placed in a box, which was kept in a trunk, of which his wife had the key; that he first missed fifty dollars, but lost altogether about two hundred dollars; that it was all in gold coins of different denominations, $20, $10, $5, &c.; that some of it was lost about a week before Christmas, 1887; that the key was on a ring, on which a shoe-buttoner was also fastened; that the ring was sometimes in the possession of Maria Sharp, who was a servant in his family in attendance on his children, and who was also the defendant's step-daughter; and that he had seen the defendant at his house several times talking with the girl, "and one time shortly before Christmas, 1887." The prosecution then introduced Maria Sharp as a witness, who testified, in substance, that she stole the money at the instigation of the defendant, who was her mother's husband; that he promised to send her to school, if she "would get him some money from Mr. Sikes' trunk, who, he said, was making barrels of it, and would not miss it;" that she only took money once, and gave it to her mother; "that when the defendant came for her to get money for him," by agreement between them, he brought a pretended message from her mother; that he came two or three times; that he came to the back gate on the second occasion, and delivered the message agreed on, but she told him "There aint any more to get," and went off to the house. Frank Coskrey, another witness, "referring to the time last above named by Maria Sharp," testified that he was standing about fifty yards distant when the defendant came and called her to the back gate, and heard her make the remark above quoted, but did not hear anything else that was said between them. On this evidence, the court gave the charge which is copied in the opinion of this court, and to which the defendant excepted. There was other evidence in the case, but it requires no notice.

W. L. Parks, for appellant, cited *Griffin v. State*, 76 Ala. 29; *Murphy v. State*, 6 Ala. 845; *Grant v. State*, 55 Ala. 201.

W. L. Martin, Attorney-General, for the State, cited *May v. State*, 85 Ala. 14; *Grattan v. State*, 71 Ala. 344; *Chisholm v. State*, 45 Ala. 66; 11 Ind. 195; 16 Gray, 240; 11 Cush. 142; 59 Ala. 104; 63 Ala. 5; 76 Ala. 35.

6

STONE, C. J.—Defendant was indicted under section 3784, Code of 1886, for receiving and concealing stolen money, knowing it to be stolen, and "not having the intent to restore it to the owner." The money was alleged to have been stolen from Sikes, about Christmas, 1887. An accomplice was the witness by whom the most important criminating facts were proved. Another witness, Coskrey, was examined, with a view of corroborating the testimony of this accomplice. He testified that, about the time of the larceny, he, the witness, was at Mr. Sikes' mother's, about fifty yards from Mr. Sikes' back gate, and heard Maria, the accomplice, say to defendant, in reply to something said by defendant, which witness did not understand, "There aint no more to get." Maria then walked off from defendant, and witness heard no more. It was then about dusk.

Under our statute, "a conviction of felony can not be had on the testimony of an accomplice, unless corroborated by other evidence, tending to connect the defendant with the commission of the offense."—Code, 1886, § 4476, and note. The court charged the jury: "If you believe from the evidence that Frank Coskrey heard a conversation at or near the gate between Wes. Burney and Maria Sharp, the accomplice, and heard Maria, to what he said, reply, 'There aint no more to get;' this is corroborative evidence, tending to connect defendant with the commission of the offense, if committed."

It will be seen that this remark—all that the witness Coskrey is claimed to have heard—does not mention money, nor expressly refer to it. That may have been her meaning, and if so, it is not only not improbable, but very likely, that his remark, not heard by the witness, referred to the same subject, and that his request was that she should bring him money. If so, this would "tend to connect defendant with the commission of the offense." But, to have this effect, there was an inference to be drawn, and only the jury could draw that inference. The charge under discussion was a charge on the effect of the evidence; and such charge should never be given, when a material inquiry of fact rests in inference.—3 Brick. Dig. 110, §§ 48, 53, 55, 56. The court erred in giving this charge.

The indictment in this case is bad. It should have averred the number and denomination of the coins, or of some of them, or that the same were to the grand jury unknown. Such have been the rulings of this court; and as this requirement is both reasonable and easily conformed to, we are un-

willing to depart from it.—*State v. Murphy*, 6 Ala. 845; *Du-Bois v. State*, 50 Ala. 139; *Grant v. State*, 55 Ala. 291; Whar. Cr. Pl. § 218.

Reversed and remanded.

