285 So.2d 526

**Curtis Ray PARKER**

**v.**

**STATE.**

**6 Div. 489.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 16, 1973.

Charles O. Caddis, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Jefferson County, Alabama, charged the appellant with robbery. The Jury's verdict and judgment set sentence at twenty-five years imprisonment in the penitentiary. Appellant's motion for new trial was denied.

The first witness to testify was Early Meriweather, the victim of the alleged robbery. He testified that he was seventy-eight years old and was currently living in Syracuse, New York. During the first part of July, 1971, he had been living alone at 2319 Twenty-Fourth Avenue, North, in Birmingham, Alabama. Meriweather stated that he had known the appellant about three years. On the morning of July 4, 1971, at approximately 2:10 a. m., the appellant knocked on Meriweather's door. Meriweather got out of bed and went to the front door. Upon seeing the appellant, he invited him inside and they went back to the bedroom. Appellant asked if he could spend the night and offered to pay. Meriweather agreed and gave him the front room of the house next to the street. Meriweather then went back to sleep. He was awakened around 6:00 the next morning by a noise in the front yard. He went outside and saw the appellant. A two by two, about six feet long, that had been holding up an old steel swing, had fallen down and appellant was standing with his hands behind his back. Meriweather told him he would fix something to eat before he left and turned to go back inside. He testified that he got as far as the bedroom before he was rendered unconscious. When he came to he managed to call for help and was taken to the hospital where he stayed for seven weeks due to a broken jaw and a fractured skull.

Meriweather further testified that the day before, on Saturday, he had cashed his Social Security check and had two fifty dollar bills, two twenties, one ten, one five, and four ones in his pocket. He testified he had the money in his pocket when he went out on the porch Sunday morning, but when he regained consciousness it was gone. There was also a twenty-two caliber Winchester rifle missing from his bedroom. He stated that he had not seen or heard anyone other than appellant around the house prior to losing consciousness.

The State was unable to call Lucy Meriweather, the sister of the victim, because she resided outside the state and was also in the hospital. The District Attorney was allowed to read her testimony from a previous trial of the same case that had resulted in a mistrial. During this testimony she had stated that the appellant had come

up to her on the porch of the victim's house and asked about him. During the conversation appellant made the statement, "Well, he might live to identify the robber and he might not."

The first witness for the defense was Mrs. Ethel McCrary, who lived at 1721 Sixteenth Place, North. Mrs. McCrary testified that she was appellant's landlady, and that on the night in question appellant had retired to his room around 10:00 p. m. She further stated that she did not hear anybody enter or leave the house that night, because if they had she would have heard her Chihuahua dog bark. Appellant had paid her $12.00 for rent on Friday and paid $12.00 more that Sunday.

On rebuttal the State called Mr. Ernest Scheinert, Jr., who was the payroll clerk for the company that employed the appellant. A payroll check issued to the appellant during July was introduced into evidence, and Mr. Scheinert testified that it was the only check issued to appellant prior to July 4, 1971. The check showed that appellant earned $1.97 per hour and worked forty-one hours at time and a half for the week ending July 4, 1971.

Mrs. Violet Hatcher, the appellant's sister-in-law, stated that she accompanied appellant to a food store on July 4, 1971, where he bought some food and also cashed a $30.00 money order.

The appellant did not testify at trial.

I

Appellant, in a motion to dismiss the indictment, raised a plea of former jeopardy. The appellant cites as reversible error the action of the trial court in overruling this motion. The record shows that on September 13, 1972, after the jury had deliberated for approximately five hours, the court declared a mistrial in the case, and both the defendant, through counsel, and the District Attorney for the State agreed thereto.

In legal effect a mistrial is equivalent to no trial at all. Powell v. State, 37 Ala.App. 192, 65 So.2d 718.

In Powell, supra, the court quoted from State v. Hutter, 145 Neb. 798, 18 N.W.2d 203, which stated:

"The general rule is that when a person has been placed on trial on a valid information or indictment before a court of competent jurisdiction, has been arraigned and his plea entered, and a jury has been impaneled and sworn, he has been placed in jeopardy. But when the jury fails to agree on a verdict . . . the whole proceeding is nullified and nothing remains which can benefit the defendant."

When, as happened here, the jury disagrees, the proceeding is completely nullified, and a plea of former jeopardy is not available to the defendant on the second trial. Curry v. State, 203 Ala. 239, 82 So. 489; and *Powell*, supra.

Appellant further contends that the second trial constituted cruel and unusual punishment. There is no merit to the argument.

II

Appellant also argues that the trial court committed reversible error in allowing the State to read into evidence the testimony of Lucy Meriweather from the prior trial. Appellant claims this was reversible error because he chose, for tactical reasons, not to cross-examine the witness in the first trial and was thereby prevented from doing so in the second trial.

This point is discussed in Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837, cert. den. 254 Ala. 74, 46 So.2d 847, where the court stated:

"The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, is permanently absent from the State, or becomes unavailable by rea-

son of claim of privilege at the second trial. Mims v. Sturdevant, 36 Ala. 636; Jeffries v. Castleman, 75 Ala. 262; McCoy v. State, 221 Ala. 466, 129 So. 21. Even so, the evidence given at the former trial is admissible only if in the subsequent trial the issues and parties are substantially the same, and the issue in the subsequent trial is substantially included in the first trial, though there may be a nominal change of parties. Hill v. McWhorter, 237 Ala. 419, 187 So. 494. "In addition to the above requirements the testimony of a witness in the former trial or action must have been given under oath, Davis v. State, 17 Ala. 354, before a tribunal or officer having legal authority to take testimony and affording in practice an opportunity for cross examination, and so presented that the party against whom the witness was offered had an opportunity to test its credit by cross examination. Wigmore on Evidence, Vol. V, Third Edition, Sections 1370–1394. See also McElroy, The Law of Evidence in Alabama, pp. 91, 92.

"Opportunity to exercise the right of cross examination, and not the actual exercise of the right, is sufficient. One's failure to exercise the right does not furnish grounds to exclude the former testimony. Long v. Davis, 18 Ala. 801; Percy v. State, 125 Ala. 52, 27 So. 844; Wigmore, supra."

Appellant had the opportunity to cross-examine the witness at the first trial and he cannot now complain because of his failure to do so.

### III

The trial court allowed the following to be read into evidence from Lucy Meriweather's prior testimony:

"He stood there a few minutes. He said, well, he might live to identify the robber and he might not.

"Well, honestly, that scared me. Then he said, I been convicted twice right here in this State, once for my neck—

"(Objection: sustained)

"THE COURT: Excuse me. Let me interrupt. Ladies and gentlemen, the last statement the Court is allowing to come before you not for truthfulness of the statement, not whether this defendant has ever been convicted, but only as part of the conversation the witness is testifying to. You are not to consider it as to any conviction.

"DEFENSE ATTORNEY: Your Honor, I would like to ask clarification of the statement in here where he's read, 'Well, honestly, that scared me.'

"I would object—submit an objection. It calls for a mental operation on the part of the witness testifying.

"MR. SCHOLL: We submit it would be improper.

"THE COURT: Here again, ladies and gentlemen, the Court is allowing this to come to you only because it was in testimony prior hereto. You are not to consider it in any manner because it would call for a mental operation on behalf of the witness who testified originally, Lucy Merriweatther. You may continue."

As above shown, we believe the trial court correctly instructed the Jury as to the effect of this prior testimony, and therefore no error resulted therefrom.

We have reviewed the entire record in this case, as required by Title 15, Section 389, Code of Alabama 1940, and find no error therein. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.