[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1321 
Second degree murder; sentence: twenty years' imprisonment. *Page 1322 
This is yet another case in a series of cases arising out of the kidnapping and double murder of Mrs. Clarice Knabe and Ronald Harvey White. The instant appeal is from a conviction resulting from appellant's second trial for the murder of Mrs. Knabe. Appellant's conviction in his first trial for murdering Mrs. Knabe was ultimately reversed because of prosecutorial comments on appellant's failure to testify and because a proper predicate as to a chain of identification to certain evidence was not laid. For an appellate history resulting from appellant's first trial for murdering Mrs. Knabe, see Yarber v.State, 375 So.2d 1212 (Ala.Cr.App. 1977), reversed,375 So.2d 1229 (Ala. 1978), on remand, 375 So.2d 1231 (Ala.Cr.App. 1978),reversed, 375 So.2d 1231 (Ala. 1979), on remand,375 So.2d 1236, (Ala.Cr.App. 1979). See also Yarber v. State,368 So.2d 868 (Ala.Cr.App.), cert. denied, 368 So.2d 871 (Ala. 1978);Miles v. State, 343 So.2d 801 (Ala.Cr.App.), cert. denied,343 So.2d 806 (Ala. 1977).
 I
Appellant's first contention of error is that he was convicted on the uncorroborated testimony of an accomplice. Appellant argues that Danny Ray Mylar, alias Miles, was an accomplice and that insufficient evidence was presented by the State to corroborate his testimony. Because of our supreme court's decision in Yarber v. State, 375 So.2d 1229 (Ala. 1978), upon this exact issue, we find no merit to this contention.
In the case before us, Mylar took the stand but refused to testify based on the Fifth Amendment. The trial court then properly allowed the State to read into evidence Mylar's prior testimony which he gave at appellant's first trial for murdering Mrs. Knabe. Questions and answers were excluded where defense objections had been sustained in the original trial. See Yarber v. State, 375 So.2d at 1220-21, for the details of Mylar's testimony.
The supreme court on review of appellant's first murder trial held that it could not be said that Mylar was an accomplice asa matter of law because he denied his participation in the offense. The supreme court stated: "[I]t is apparent that whether Miles [Mylar] was or was not an accomplice was adisputed fact." 375 So.2d at 1230. We believe it a fair reading of the supreme court opinion that, when there is a "disputed" fact as to whether a witness is or is not an accomplice, a jury question exists. When such a jury question exists, an appellate court cannot categorize that witness to be an accomplice as a matter of law.
Since, in the instant case, the testimony of Mylar which incriminated appellant consisted solely of his testimony at appellant's first murder trial, it thus becomes readily apparent that Mylar cannot now be considered an accomplice as a matter of law. Yarber, 375 So.2d at 1230. If Mylar was not an accomplice as a matter of law at appellant's first murder trial, he cannot be considered an accomplice now, there being no new incriminating testimony by Mylar offered by the State.
Thus, no corroboration of Mylar's testimony was necessary to sustain appellant's conviction. Through Mylar's eyewitness account of appellant's heinous actions, each element necessary to prove second degree murder was sufficiently established. Any conflicting evidence was for the jury to resolve.
However, the supreme court went further in Yarber and found that even if it was assumed that Mylar was an accomplice his testimony was sufficiently corroborated. 375 So.2d at 1231. We have carefully compared the facts in this case with the facts in appellant's first murder trial. Upon review we find that the facts corroborative of Mylar's testimony are almost identical in pertinent part. Again we find, as the supreme court did, that even if it were assumed that Mylar was an accomplice his testimony was sufficiently corroborated.
Corroborative evidence need not be strong or sufficient of itself to support a *Page 1323 
conviction, the criterion being that it legitimately tend to connect the accused with the offense. Andrews v. State,370 So.2d 320 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979); Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert.denied, 364 So.2d 406 (Ala. 1978). Both circumstantial and direct evidence are competent to connect the defendant independently with the crime about which the accomplice has testified. Jacks, supra. As the supreme court stated in Dolvinv. State, 391 So.2d 133, 137 (Ala. 1980), quoting from White v.State, 294 Ala. 265, 314 So.2d 857, cert. denied, 423 U.S. 951,96 S.Ct. 373, 46 L.Ed.2d 288 (1975):
 "`Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty. Lowe v. State, 90 Fla. 255, 105 So. 829 (1925). Circumstantial evidence is said to be the inference of a fact in issue which follows as a natural consequence according to reason and common experience from known collateral facts. Lowe, supra.'"
In the instant case Alma Vest left the 2010 Lounge at approximately eleven o'clock on the night of the crime. She testified that Mylar, Yarber and the two victims were the only people in the bar when she left. She had earlier observed Mylar, Yarber and Ronald White seated at the bar. White was seated on the middle stool and Mylar and Yarber were seated on either side of him. Mylar was agitating White in some manner. Ms. Vest said White "seemed to be wanting to be left alone" and that he "was trying to get his mind together to study" for his final examinations in college.
Gus Konstant, owner of the lounge, arrived there at approximately 11:10 p.m. He found the front door locked. On going to the rear door, he entered and found the lounge to be deserted, and it appeared to him that a robbery had taken place. Thus, the time span between Yarber being seen with the victims and their kidnapping was only a few minutes — some ten or fifteen minutes.
The fact that the deceased was last seen in the presence of the accused is a circumstance to consider. Kozlowski v. State,248 Ala. 304, 27 So.2d 818 (1946); Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). See also Hayes v. State, 395 So.2d 127 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981), where the deceased was seen dancing with the defendant some fifteen minutes before being last seen alive by her friends. Additionally, sufficient corroboration of the testimony of an accomplice may be furnished by a tacit admission by the accused, by the suspicious conduct of the accused, and the association of the accused with the accomplice, or by the defendant's proximity and opportunity to commit the crime.Jacks v. State, supra. "In determining the sufficiency of corroborative evidence testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined." Fuller v. State, 34 Ala. App. 211,215, 39 So.2d 24 (1948), cert. denied, 252 Ala. 20, 39 So.2d 29
(1949).
The rule is often stated that when an accomplice and an accused are seen together in rather unusual places and times in proximity to the locus of the crime, which occurs at an unreasonable hour, the requirements of corroboration are met.Robinson v. State, 40 Ala. App. 74, 108 So.2d 376 (1958), cert.denied, 268 Ala. 698, 108 So.2d 377 (1959). It may be more properly and correctly said of the rule, as was held in Kimmonsv. State, 343 So.2d 542, 547 (Ala.Cr.App. 1977):
 "[T]he fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime *Page 1324 
to furnish the necessary corroboration of the accomplice. . . ."
See also Dolvin v. State, supra.
 II
Appellant next contends that the trial court made an impermissible comment on the effect of certain evidence in charging the jury concerning Alma Vest's testimony. We disagree.
It has been stated numerous times that the court's oral charge should be considered as a whole. Brooks v. State,353 So.2d 1 (Ala.Cr.App. 1977). For the sake of clarity we here set out the entire portion of the oral charge which deals with corroboration of an accomplice's testimony:
 "Now, ladies and gentlemen, it is the law of this State that a person charged with a felony such as murder cannot be convicted upon the uncorroborated testimony of an accomplice. That is where two people combine or conspire to commit a crime and they both commit that crime. One cannot be convicted upon the uncorroborated testimony of another. That is uncorroborated means that standing alone with no other evidence tending to connect the other to a crime.
 "You heard the testimony of one Danny Ray Mylar. If you believe that he is an accomplice in this case, if you believe that — of course, the testimony — you heard that testimony.
 "But, if you believe he is an accomplice in this case you cannot convict this defendant, Samuel Yarber, unless you further believe beyond a reasonable doubt the testimony of Alma Vest in this case. This is the only other evidence in this case which would tend to connect this defendant. That is even if you believe Danny Ray Mylar's testimony, if you believe he is an accomplice, I'm not saying you should or shouldn't, that is up to this jury. If you believe he is an accomplice in this case or participated in this case where he was an active participant you cannot convict Samuel Yarber, unless you also believe beyond a reasonable doubt the testimony of Alma Vest. Then assuming everything else you believe beyond a reasonable doubt of this defendant, and I'm not suggesting by that that you should believe beyond a reasonable doubt this defendant, but if you believe beyond a reasonable doubt from all the evidence, including the testimony of Danny Ray Mylar, that this defendant is guilty, either as an aider or abettor or an active participant in the killing, you cannot convict him if you believe Danny Ray was an accomplice or a participant unless you believe beyond a reasonable doubt the testimony of Alma Vest."
The following exchange includes defense counsel's exception to the above charge and the trial court's response:
 "The other thing is that the — on the charge of accomplice, Your Honor has taken from consideration from this jury the true corroboration theory that Your Honor had committed that if they believe the testimony — if they believe the testimony of Danny Ray Mylar they could not convict the defendant unless they believed testimony of Alma Vest.
 "And when Your Honor says that, it then takes the theory of corroboration. You have left no other thing if you believe the testimony of Alma Vest. You have now instructed the jury through your charge that if they do believe Alma Vest and Danny Ray Mylar, convict this defendant then Your Honor is then commenting on the testimony.
 "We object to that, may it please the Court, and ask they be remedied.
 "THE COURT: Well, of course, that was the exact same charge in McElroy on Evidence as to disputed accomplice. I will clarify to the point that I'm not hinging on the case on whether or not they believe Alma Vest, that this jury is still to believe beyond a reasonable doubt. That is the defendant's charge I gave.
. . . . *Page 1325 
"(Within hearing of the jury.)
 "THE COURT: Of course, ladies and gentlemen, I want to clarify what I was talking about, if you believe beyond a reasonable doubt about the accomplice, whether or not it was corroborated or not. Of course, the test in order to convict this defendant must always be is the evidence as believed by you, to convince you beyond a reasonable [sic] that this defendant is guilty, even though you may believe certain testimony of any particular witness beyond a reasonable doubt.
 "The test remains the same. The burden is on the State to convince all of you beyond a reasonable doubt of the guilt of this defendant."
Appellant relies on Burney v. State, 87 Ala. 80, 6 So. 391
(1889), and maintains that the "practical effect" of the trial court's charge here was that the testimony of Vest, if believed, sufficiently corroborated the testimony of Mylar.
We note that Alma Vest's testimony in this case is basically the same in pertinent part as her testimony in appellant's first murder trial which is reported in 375 So.2d at 1222-23. Ms. Vest did further testify that she noticed an altercation between Mylar and Ronald White while she was at the 2010 Lounge. Mylar "appeared to me to be agitating Ronny White."
While that portion of the trial court's charge set out above may not be a model of perspicuity, we do not believe it amounted to an impermissible comment on the effect of the evidence which would require reversal.
In Burney, supra, the defendant was accused of "receiving and concealing stolen money." A witness, Maria Sharp, was determined to be an accomplice, evidently as a matter of law. Her testimony proved most of the criminating facts. Another witness, Frank Coskrey, testified for the purpose of corroborating Sharp's testimony. Coskrey testified that near the time and place the money was stolen he heard Sharp tell the defendant in reply to something the defendant said, "There aint [sic] no more to get."
The court charged the jury in Burney as follows:
 "`If you believe from the evidence that Frank Coskrey heard a conversation at or near the gate between Wes. Burney and Maria Sharp, the accomplice, and heard Maria, to what he said, reply, "There aint no more to get;" this is corroborative evidence, tending to connect defendant with the commission of the offense, if committed.'"
Mr. Chief Justice Stone, in reversing Burney's conviction, wrote the following in regard to the trial court's erroneous instructions:
 "It will be seen that this remark — all that the witness Coskrey is claimed to have heard — does not mention money, nor expressly refer to it. That may have been her meaning, and if so, it is not only not improbable, but very likely, that his remark, not heard by the witness, referred to the same subject, and that his request was that she should bring him money. If so, this would `tend to connect defendant with the commission of the offense.' But, to have this effect, there was an inference to be drawn, and only the jury could draw that inference. The charge under discussion was a charge on the effect of the evidence; and such charge should never be given, when a material inquiry of fact rests in inference. . . ." 87 Ala. at 82, 6 So. 391.
In other words, the instruction was bad because the trial judge had deduced for himself that Sharp was referring to the stolen money in the conversation Coskrey overheard between Sharp and Burney. Sharp could have been referring to money or to something else in her reply to Burney. Whether she was referring to the stolen money or to some other article was a question of fact for the jury. To put it another way, it was the trial judge's drawing inferences from the evidence in making his charge which infringed on questions for the *Page 1326 
jury that caused error in Burney. Error did not rest simply because the trial judge gave a charge which elucidated or drew attention to certain corroborative evidence tending to connect the defendant with the commission of the offense.
By statute the "court may state to the jury the law of the case and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties." (Emphasis added.) Ala. Code § 12-16-11 (1975). The court does not invade the province of the jury in a criminal prosecution by stating that there is or is not evidence of particular facts when such is the case. Seibold v. State, 287 Ala. 549, 253 So.2d 302 (1970). Moreover, it is not error for the court in its general charge to state the tendencies of the evidence for the State and the defendant. Crain v. State, 166 Ala. 1, 52 So. 31 (1910).
A close review of the oral charge before us, as set out above, reveals a far different situation from that described inBurney, supra. The trial judge here drew no inferences from the evidence nor infringed on questions for the jury in making his charge. The charge was in no way a statement as to the effect of the evidence or as to the effect the jury should give particular testimony.
A charge upon the effect of the evidence is a charge which instructs the jury that certain facts in issue have been proved, or that certain evidence in the case does or does not establish a certain fact or facts in dispute, or directs the jury what their finding on an issue of fact must be if they believe the evidence in the case. Wyman v. State, 47 Ala. App. 643, 259 So.2d 849 (1972); Dunn v. State, 8 Ala. App. 410,62 So. 996 (1913).
The trial judge did not relate Alma Vest's testimony so as to influence the jury one way or the other, McCovery v. State,365 So.2d 358 (Ala.Cr.App. 1978); nor was his statement calculated to control the jury in its consideration of the weight to give her testimony. Seibolds, supra.
As we read the charge the trial judge simply instructed the jury as follows:
(1) You may not convict the defendant on the uncorroborated testimony of an accomplice.
(2) If you believe Danny Ray Mylar's testimony, it is up to you to decide whether or not he is an accomplice.
(3) If you believe Danny Ray Mylar's testimony and believe him to be an accomplice, then you cannot convict the defendant unless you further believe Alma Vest's testimony, because her testimony is the only other evidence which would tend to connect the defendant.
The trial court did not instruct the jury, as the appellant alleges in brief, that if they believed Mylar to be an accomplice and also believed Vest's testimony they must convict the defendant. The trial court carefully phrased his charge in the negative — "cannot be convicted," "cannot convict this defendant," and "cannot convict him."
The court's pointing out to the jury that Alma Vest's testimony, if believed beyond a reasonable doubt, was the "only other evidence in this case which would tend to connect this defendant" is in line with the authority of Seibolds and Crain,supra. That statement instructed the jury that evidence was presented which, if believed, would tend to connect the defendant with the crime when such was the case.
Furthermore, the instruction was favorable to appellant in that it eliminated from the jury's consideration all other evidence as being corroborative in the case except Alma Vest's testimony, if believed, as tending to connect him with the crime. In effect, the jury was instructed that if they found Mylar to be an accomplice the only corroborative evidence they could consider as tending to connect appellant with the crime was the testimony of Alma Vest. If the jury did not believe Alma Vest's testimony *Page 1327 
sufficiently corroborated Mylar's testimony and connected appellant with the crime, then according to the trial court's charge they could not convict.
We have considered and construed the trial court's oral charge as a whole in connection with the evidence and find no reversible error.
 III
Appellant next argues that the trial court committed reversible error in refusing the following requested charges:
"Defendant's Charge No. 27
 "Ladies and Gentlemen of the jury, it is your determination under the law to say whether or not any witness is considered by you to be an accomplice of the defendant; if you so believe that any witness is an accomplice, then under the law you may accept other testimony of other witnesses who are not considered to you to be accomplice for the purpose of corroborating the statement of any accomplice. However, if you believe that witness's testimony not to be substantial evidence against the defendant, then you cannot convict the defendant."
"Defendant's Charge No. 74
 "Ladies and gentlemen of the Jury, it is your determination under the law to say whether or not any witness is considered by you to be an accomplice of the defendant; if you so believe that any witness is an accomplice, then under the law the corroboration of an accomplice is not sufficient if it merely shows commission of offense or circumstances thereof or that the accomplice and defendant are acquainted or connected, but there must be independent evidence supporting testimony of accomplice or tending to confirm him which must be of a substantive character, and must tend to connect defendant with commission of crime charged or to identify him as guilty person, and which is inconsistent with his innocence."
"Defendant's Requested Charge No. 79
 "Ladies and gentlemen of the jury, the State of Alabama has submitted to you that Danny Ray Mylar and the defendant were joint venturers in this case thereby telling you that Danny Ray Mylar is an accomplice. If you believe that Danny Ray Mylar is an accomplice with the defendant, then all other evidence, exclusive of that testimony of the accomplice must sufficiently connect defendant with the commission of the offense before you can convict."
"Defendant's Requested Charge No. 80
 "Ladies and gentlemen of the jury, the State of Alabama has submitted to you that Danny Ray Mylar and the defendant were joint venturers in this case thereby telling you that Danny Ray Mylar is an accomplice. If you believe that Danny Ray Mylar is an accomplice with the defendant, I charge you that the corroboration necessary to support the testimony of an accomplice must be unequivocal and of a substantive character, must be of some fact tending to prove the guilt of defendant and such as legitimately tends to connect defendant with the crime, must be inconsistent with innocence of defendant, and must do more than raise a suspicion of guilt."
We have carefully reviewed each of these requested charges and find them properly refused. The charges were either covered substantially by the trial court's oral charge, were abstract, were confusing and misleading, were ungrammatical, were not hypothesized on a "belief from the evidence," contained more than one legal principle, or were incorrect statements of law.Lambeth v. State, 380 So.2d 923 (Ala. 1979); Wilbanks v. State,289 Ala. 171, 266 So.2d 632 (1972); Gaston v. State,359 So.2d 1170 (Ala.Cr.App. 1978); Harris v. State, 358 So.2d 482
(Ala.Cr.App.), cert. denied, 358 So.2d 487 (Ala. 1978); Hudsonv. State, 335 So.2d 208 (Ala.Cr.App.), cert. denied,335 So.2d 211 (Ala. 1976); Hawkins v. State, 53 Ala. App. 89,297 So.2d 813, cert. denied, 292 Ala. 723, 297 So.2d 817 (1974). *Page 1328 
 IV
Appellant contends he was denied the right of cross-examination when Mylar's testimony from the previous trial was admitted into evidence.
In the previous trial defense counsel elected not to cross-examine Mylar. On the instant trial Mylar refused to testify, claiming the Fifth Amendment. The trial court ruled that it was going to dismiss the pending cases against Mylar, that Mylar had no Fifth Amendment privilege. However, the trial court did not force Mylar to testify, stating that Mylar was "serving life and 18 years and there isn't much I can do to him."
Before Mylar's testimony was read into evidence in the instant trial, defense counsel argued that he be allowed to cross-examine Mylar. The trial court ruled that appellant's failure to cross-examine Mylar at the previous trial constituted a waiver. Defense counsel than presented two reasons why he should be allowed to cross-examine Mylar. We shall consider these arguments separately.
Defense counsel first argued that because "[t]he Supreme Court . . . changed the law or altered it regarding the accomplice theory" in Yarber, 375 So.2d 1229, a "new and significantly material line of cross-examination needs to be shown." Defense counsel cited as authority Mancusi v. Stubbs,408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). In essence, defense counsel argued that because of an alleged "change in the law" he had the right under Mancusi to cross-examine Mylar in this case. We disagree with this argument.
In Mancusi the defendant, due to a successful habeas corpus action, was retried for murder some ten years after first being convicted. At the retrial the prior testimony of a key witness, who was then unavailable, was read into evidence over objection. The defendant argued he was denied his right to confront the witness. In recognizing that prior recorded testimony may be admitted in appropriate cases, the Supreme Court held that the prior testimony must bear some "indicia of reliability" before it can be placed before the jury when there is "no confrontation of the declarant." 408 U.S. at 213,92 S.Ct. at 2313.
Two factors which Justice Rehnquist considered in finding the appropriate "indicia of reliability" were: (1) the defendant was represented by counsel at the first trial and was afforded the opportunity to fully cross-examine the witness, and (2) defense counsel at the retrial did not in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial.408 U.S. at 214-15, 92 S.Ct. at 2313-2314. It was further pointed out inMancusi that defense counsel at retrial placed in the record a list of twelve questions he wished to ask which he did not ask of the unavailable witness at the prior trial. 408 U.S. at 214,92 S.Ct. at 2313.
An examination of the record before us from the time the State first moved to have admitted Mylar's prior testimony until the time it was read into evidence fails to reveal one instance where defense counsel complained that Mylar's prior testimony was unreliable. While Mylar's prior testimony may have, in fact, been most unreliable (see Yarber, supra), this point was not raised.
It was uncontested that defense counsel had the opportunity to cross-examine Mylar at the prior trial, but chose not to do so. Defense counsel's only comment which relates to this part of his argument, which was not connected with the issue of reliability, was that because the law on the accomplice theory was allegedly changed he should now have the right to cross-examine Mylar. This argument is not in juxtaposition with the propositions contained in Mancusi, supra.
In applying the second factor Justice Rehnquist considered in determining the appropriate "indicia of reliability," upon which defense counsel here seems to rely, it *Page 1329 
is apparent from the record that defense counsel did not proffer "any new and significantly material line of cross-examination." He did not submit a single question he intended to ask Mylar. Defense counsel's argument concerning the "law changing" misses the mark. The trial court cannot be put in error for failing to apply the Mancusi rationale.
Our review is limited to matters included in the record. Lucyv. State, 340 So.2d 840 (Ala.Cr.App.), cert. denied,340 So.2d 847 (Ala. 1976). Facts asserted in the brief of appellant, which cannot be ascertained from the record, cannot be reviewed. Lucy, supra. A trial court is required only to pass upon grounds of an objection which are announced and those omitted are deemed waived. Rogers v. State, 53 Ala. App. 573,302 So.2d 547 (1974). Specified grounds of an objection to evidence waive all other grounds. Ward v. State, 376 So.2d 1112
(Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala. 1979). A trial court need not cast about for tenable grounds of an objection to evidence. Watkins v. State, 219 Ala. 254,122 So. 610 (1929).
Defense counsel argued secondly that Mylar was available on the instant trial as a witness. Defense counsel contended that Mylar was "not unavailable" because of the trial court's clarification that Mylar had no Fifth Amendment privilege. When the trial court asked Mylar if he understood that he did not have a Fifth Amendment ground not to testify, Mylar replied, "No, I don't understand how I lost it." We, too, do not understand how Mylar "lost" his Fifth Amendment rights.
It is true that Mylar's convictions for offenses arising out of the same transaction presently before us had been affirmed by the State court action and that all the other pending cases against Mylar were dismissed. However, this being the case does not negate the possibility that Mylar might apply for relief in the federal courts. Mancusi, supra, is a classic example where the defendant's conviction and state court affirmance were set aside when habeas corpus relief was subsequently granted. Under the circumstances of Mylar's situation, we do not see how he forfeited his rights under the Fifth Amendment.
Mylar steadfastly refused to testify on Fifth Amendment grounds, and even though the trial judge asserted another ground for Mylar not testifying, we find that Mylar was in fact unavailable by reason of his Fifth Amendment claim. Miles v.State, 343 So.2d 801 (Ala.Cr.App.), cert. denied, 343 So.2d 806
(Ala. 1977). Because appellant had the opportunity to cross-examine Mylar at the first trial, he cannot now complain because of his failure to do so. This exact situation was presented in Parker v. State, 51 Ala. App. 362, 285 So.2d 526,cert. denied, 291 Ala. 795, 285 So.2d 529 (1973):
 "Appellant also argues that the trial court committed reversible error in allowing the State to read into evidence the testimony of Lucy Meriweather from the prior trial. Appellant claims this was reversible error because he chose, for tactical reasons, not to cross-examine the witness in the first trial and was thereby prevented from doing so in the second trial.
 "This point is discussed in Wyatt v. State, 35 Ala. App. 147, 46 So.2d 837, cert. den., 254 Ala. 74, 46 So.2d 847, where the court stated:
 "`The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, is permanently absent from the State, or becomes unavailable by reason of claim of privilege at the second trial. . ..
 "`Opportunity to exercise the right of cross examination, and not the actual exercise of the right, is sufficient. One's failure to exercise the right does not furnish grounds to exclude the former testimony. Long v. Davis, 18 Ala. 801; Percy *Page 1330 v. State, 125 Ala. 52, 27 So. 844; Wigmore, supra.'
 "Appellant had the opportunity to cross-examine the witness at the first trial and he cannot now complain because of his failure to do so."
And in Bridges v. State, 26 Ala. App. 1, 152 So. 51 (1933), the Court of Appeals said in addressing this issue:
 "The witness Gilpin, when called, refused to testify, claiming his constitutional right not to be forced to give evidence which would tend to incriminate him. He thereby placed himself where he was not available to the state to be used as a witness. Thereupon, over the objection and exception of defendant, the state was allowed to make preliminary proof that this witness had been examined and cross-examined as a witness for the state on the former trial of this same case in the circuit court of Jefferson county, and over objection and exception of defendant the state was then allowed to read to the jury the testimony of the witness Gilpin given on such former trial. This is not now an open question in this state, and while there are some decisions to the contrary, this court and the Supreme Court have spoken on the question and we see no reason to reopen the subject. The witness Gilpin having testified on a former trial of this case, with full opportunity for cross-examination and when called to testify on this trial he rendered himself incompetent as a witness without fault on the part of the state, the trial court properly allowed his testimony on the former trial to be read in evidence. . . ."
 V
The question whether state law enforcement agents have the power and authority to grant an accused immunity from arrest and prosecution for violating our criminal law has been definitively answered in the negative. Yarber v. State,375 So.2d 1212 (Ala.Cr.App. 1977), reversed on other grounds,375 So.2d 1229 (Ala. 1978). This holding was implicitly affirmed by our supreme court. Yarber v. State, 375 So.2d 1231 (Ala. 1979).
 VI
Appellant alleges as his final contention of error that a plea bargaining agreement had been reached with the State in this case, but that at the last moment the district attorney refused to abide by the agreement and the case was brought to trial.
No guilty plea was ever entered in the case. The record fails to show that appellant ever did anything in reliance on an agreement made with the prosecution. There was no written plea bargaining agreement ever signed by appellant or any of the attorneys. From the record all the negotiations surrounding a possible settlement of the case were verbal. We conclude thatSantobello v. New York, 404 U.S. 257, 92 S.Ct. 495,30 L.Ed.2d 427 (1971), does not apply in the instant case.
We have considered each issue raised by appellant. In addition we have searched the record for reversible error and have found none.
AFFIRMED.
All the Judges concur.