LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty of the criminal possession of a forged instrument in the second degree, as proscribed by Alabama Criminal Code, § 13A-9-6(a), as follows:
“A person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument of a kind specified in section 13A-9-3 [which expressly includes a check, draft, note or other commercial instrument, etc.].”
The instrument involved was a Social Security check or draft of the United States Treasury dated September 2, 1983, for the sum of $379.00 and payable to the order of Harry G. & Kate G. Tatum, who testified as the first witnesses called by the State.
Mr. Tatum testified in detail as to the check, stating that after looking for it in vain in his mail box at or about the time of the month it usually arrived by mail, he checked with the office of Social Security and learned that it had reached, and been cashed in due course by the United States Treasury. He identified the instrument involved, which was introduced in evidence as State’s Exhibit One. He stated that the purported endorsement of Harry Tatum on the back of the check was not his. The check shows the name of Eugene Cartwright as the only other endorser of the check. Mr. Tatum testified that his wife, Kate G. Tatum, did not have to endorse the check, that he had always been able to have the check cashed by his endorsement alone, that his wife was in ill health. Mrs. Tatum testified that she knew that the “Social Security check for September 1983 had come up missing” and that “Lloyd Eugene Cartwright rented an apartment” from her and her husband. She further testified that the purported endorsement of her husband on the back of the check was not her husband’s signature.
Mr. Ralph Caine, an assistant manager for Super Foods in Andalusia in September 1983, testified in part as follows:
“Q. All right. Did you see it [the check] in September of 1983, I’ll ask it that way?
“A. Yes, sir.
“Q. Okay. And where did you see this check?
“A. When it was cashed at the store.
“Q. Okay. Did you say it was cashed at your store?
“A. Yes, sir, it was.
“Q. Do you know who cashed the check?
“A. Lloyd Eugene Cartwright.
“Q. Is he in the courtroom?

“Q. Okay. Tell the jury here, if you would, what occurred?
“A. Well, there is a guy come to front and wanted to get a check cashed and we were kind of busy, but if he went to the office and I told him to get it cashed at a service window and I told him I’d have to have an ID and he said was, you know, anything — I told him I had to have a driver’s license.
“Q. All right. Now this individual you were talking to, that’s the defendant, is that correct?
“A. Yes, sir. And he pulled his license out and then I told him he was going to have to sign the back of the check. After he signed it, he handed the check to me with the license and I got the license number and I gave the license back to him and I got the check and cashed it. *1308 The check, you know, was transferred for the money and everything.
“Q. And you gave Mr. Cartwright three hundred and seventy-eight dollars, is that correct?
“A. Yes, sir, the amount of the check.
“Q. All right. Let me show you the back of State’s Exhibit One and ask you what you see appearing on the back?
“A. Well, I see Harry Tatum, Eugene Cartwright and I got his license number there on the back.
“Q. Now, as far as the name Harry Tatum written on the back, was that on this check when Mr. Cartwright brought it in?
“A. Yes, sir, it was.
“Q. Okay. And at the store, you required him to sign his name?
“A. Yes, sir.
“Q. And he signed it in your presence?
“A. Yes, sir, on the back.

“A. Like I say, I cashed it and I put it in the cash drawer. I counted the money out to him, it was three seventy-eight and that was it. And he walked out, you know.”
There was testimony in the case to the effect that when defendant was apprehended by law enforcement authorities and shown the check, he told one of the witnesses:
“... That he did not sign that check, he named off several other subjects that he thought might have looked like him that might have used his driver’s license. He said he had no knowledge of the check.
“Q. Did you do anything else while you were there?
“A. Yes, sir. I fingerprinted him, palm printed him and asked him for handwriting exemplars.
“Q. Okay. And did he give these to you?
“A. Yes, sir. He did.”
Said fingerprints and palm prints were examined by “Agent Bob Camp with the Secret Service in Montgomery.”
Mr. James R. Bartee, an employee of the United States Secret Service as a fingerprint specialist, testified:
“A. My primary duty is to examine Treasury checks, counterfeit money, genuine currency, threatening letters to the president or vice president, to see if I can develop any latent fingerprints or palm prints. So I develop any latent prints, I compare them with known handprints to see if they match up. I also instruct special agents of the Secret Service as to fingerprint matters.”
In testifying at length both on direct examination and on cross-examination, Mr. Bar-tee said that palm prints of defendant’s right hand were found on the check involved in this case. He was not able to identify any latent fingerprints on the check as fingerprints of the defendant.
The only witness who testified on call of the defendant was Chief Howard Easley, of the Andalusia Police Department, who said that he had records reflecting that the defendant was “booked into the Andalusia Police Department City Jail at three-fifty P.M. on the afternoon of the fifth of September [1983]” and that “he was released on September 8th at one-forty-five P.M., at which time, he was transferred into County custody.”
There was a conflict between the testimony of Mr. Tatum and the testimony of Mr. Caine, in that Mr. Tatum testified that Mr. Cartwright was “clean shaven” and Mr. Caine testified that the man cashing the check had a beard.
I.
As the first issue presented in appellant’s brief, the contention is made that the trial court erred in refusing defendant’s requested jury charge No. 4 as follows:
“The Court charges you that you may consider circumstantial evidence in this case, but that you may not place a verdict of guilty on any charge upon circumstantial evidence unless the circumstantial evidence offered by the State is so strong as to be inconsistent with any *1309 reasonable hypothesis or explanation other than the guilt of the accused.”
At the conclusion of the court’s oral charge to the jury, defendant’s trial counsel stated to the trial judge the following:
“Number four was the charge on circumstantial evidence, which we submit is a correct statement of the law and since there was a question that somebody else may have gotten the Defendant’s driver’s license and cashed the check and in view of the fact that part of the State’s case is circumstantial in nature by reason of the fact that he lived there and the gentleman, Mr. Tatum was gone from the house when the check disappeared, all of that evidence leads me to believe that the circumstantial evidence charge contained in Defendant’s Requested Charge Number Four should have been granted.”
Appellant quotes from authorities, which uphold as principles of law statements that are almost the same as the language of defendant’s requested charge No. 4, but he cites no precedent for the approval of the language of defendant’s charge 4 in which circumstantial evidence is emphasized, as it is in said charge No. 4, but in which in any of the cases cited there was direct evidence, as well as circumstantial evidence, of defendant’s guilt. In the instant case, the evidence of the witness who identified the defendant as the man who endorsed the check by writing the name of the payee thereof on the back of the check constituted direct evidence of defendant’s guilt, which made the charge misleading at least and justified its refusal by the trial court.
II.
It is contended by the second issue presented in the brief of counsel for appellant that the trial court erred in refusing the following defendant’s requested charge No. 1:
“A reasonable doubt may arise not only from the evidence produced, but also from the lack of evidence. The burden is upon the State to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged. A defendant has the right to rely upon failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution.”
Appellant’s attorney centers primarily, if not exclusively, upon the first sentence of requested Charge No. 1. The parties are in disagreement on appeal as to whether such first sentence constitutes an instruction that should have been given to the jury. We are not required to resolve this question at this time, inasmuch as the three other sentences in the requested charge preclude the charge as a whole from being one that the trial court should have given. As was stated in Yarber v. State, Ala.Cr.App., 437 So.2d 1319, 1327 (1981), reversed on other grounds, Ala. 437 So.2d 1330 (1983):
“We have carefully reviewed each of these requested charges and find them properly refused. The charges were either covered substantially by the trial court’s oral charge, were abstract, were confusing and misleading, were ungrammatical, were not hypothesized on a ‘belief from the evidence,’ contained more than one legal principle, or were incorrect statements of law. [Emphasis supplied].”
The quotation is followed by a long list of supporting authorities. The trial court was not in error in refusing defendant’s requested Charge No. 1.
III.
By this issue in brief of counsel for appellant, it is contended that the trial court committed reversible error in refusing defendant’s requested Charge Number 2 as follows:
“The Court charges you that a reasonable doubt which would justify an acquittal is a reasonably substantial doubt arising from the evidence and remaining after careful consideration of all the testimony; if after comparing and considering all of the evidence in this case your *1310 minds are left in such condition that you cannot say that you have an abiding conviction to a moral certainty of defendant’s guilt, then you are not convinced beyond a reasonable doubt and it would be your duty to find the defendant not guilty.”
The requested charge comes interestingly close to a correct and applicable statement of the law, but we find it difficult to approve of the use of the adverb “reasonably” in modification of the adjective “substantial,” which has been time and time again approved as a synonym of the word “reasonable” in modification of the noun “doubt.” Its modification of the adjective “reasonable” is somewhat confusing, and it could well have had a misleading tendency. Furthermore, we note that in the oral charge of the court, the jury was lengthily instructed as to the necessity for the evidence to convince the jury beyond a reasonable doubt and to a moral certainty of defendant’s guilt before the jury could properly find that defendant was guilty. As a part of such oral instructions to the jury, the trial court said:
“Now when I tell you the burden is on the State to satisfy you beyond a reasonable doubt, I do not mean that you have to be satisfied beyond all possible doubt. You should be satisfied beyond such doubt as would exist in the mind of a reasonable person under all the particular facts and circumstances of this case. A reasonable doubt has been described as a doubt for which a substantial reason may be given. This defendant entered into this trial clothed with a presumption of innocence which attends him as a matter of law and as a matter of evidence until such time during the course of the trial as that presumption has been overcome and he has been legally proven guilty and all twelve of you are satisfied beyond a reasonable doubt as to his guilt.”
We conclude that the oral charge of the trial court sufficiently covered any correct principle of law set forth in defendant’s requested Charge 2 and that, therefore, defendant was not prejudiced by the refusal of such charge. As stated by Chief Justice Livingston in Young v. State, 283 Ala. 676, 679, 220 So.2d 843, 845 (1969):
“The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s general charge or in charges given to the jury at the request of the parties.”
IV.
The next issue presented by appellant is thus stated in brief of his counsel:
“THE TRIAL COURT ERRED IN REFUSING TO GRANT A VERDICT OF ACQUITTAL ON THE GROUNDS THAT THE STATE DID NOT PROVE EVERY ELEMENT ESSENTIAL TO A CONVICTION OF POSSESSION OF A FORGED INSTRUMENT, AND IN PARTICULAR DID NOT PROVE THAT THE CHECK IN QUESTION WAS FALSELY MADE, COMPLETED OR ALTERED WITH INTENT TO FRAUD [SIC], AND THAT THE ALLEGED INSTRUMENT EFFECTIVELY CREATED, TRANSFERRED, TERMINATED, OR OTHERWISE AFFECTED A LEGAL RIGHT, INTEREST, OBLIGATION, OR STATUS.”
As stated at the commencement of this opinion, the instrument involved in the instant case was “a Social Security check or draft of the United States Treasury ... payable to the order of Harry G. and Kate G. Tatum.” In his argument in support of this issue, counsel for appellant insists that as the particular instrument did not contain the endorsement or the purported endorsement of one of the two payees, Kate G. Tatum, at any of the time that evidence for the State showed it was in the possession of defendant-appellant, he could not have been in possession of a forged instrument. Appellant’s attorney relies upon the Uniform Commercial Code, § 7-3-116, which provides:
*1311 “An instrument payable to the order of two or more persons:
“(a) If in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;
“(b) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.”
The evidence in the case shows without dispute that the Social Security checks that had been issued to Harry G. Tatum and Kate G. Tatum in the past had been often cashed by Super Foods in Andalusia and had been previously and uniformly honored by the United States government without any endorsement by Mrs. Tatum. Therefore, the absence of any endorsement or purported endorsement by Mrs. Tatum on the particular check under consideration did not prevent its being the subject of forgery in the second degree, as partly defined by Code of Alabama, § 13A-9-3(a)(1), as follows:
“A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
“(1) A deed, will, codicil, contract, assignment or a check, draft, note or commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status;”
We must determine the issue presently under consideration adversely to appellant.
V.
The final issue presented on behalf of appellant is thus stated in his attorney’s brief:
“THE TRIAL COURT ERRED IN REFUSING TO GRANT A VERDICT OF ACQUITTAL ON THE GROUNDS THAT THE STATE DID NOT PROVE EVERY ELEMENT ESSENTIAL TO A CONVICTION OF POSSESSION OF A FORGED INSTRUMENT, AND IN PARTICULAR FAILED TO OVERCOME OR EXPLAIN THE TESTIMONY OF ITS OWN PRIMARY WITNESS TO THE EFFECT THAT THE CRIME WAS COMMITTED ON A DAY WHEN THE DEFENDANT WAS INCARCERATED IN THE ANDALUSIA CITY JAIL.”
Appellant’s attorney has basis for his criticism of Mr. Caine’s identification of Mr. Cartwright as the person who cashed the particular check on September 6, 1983, for that the records of the Andalusia City-Jail reveal that Cartwright was incarcerated therein from September 5, through September 8, 1983. Counsel for appellant characterizes in his brief the testimony of Mr. Caine as to the date as adamantine. Whether it is correctly so characterized or not, it gives rise to a serious question as to whether his identification of defendant as the one who obtained cash for the check was correct. Nevertheless, such question became one for the jury to consider and was not one for the trial court to determine. It was correct in overruling defendant’s motion for a judgment of acquittal.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All Judges concur.